**BICKERTON DANG, LLLP**

| JAMES J. BICKERTON | 3085-0 |
| STANLEY H. ROEHRIG (Of Counsel) | 664-0 |
| BRIDGET G. MORGAN | 8705-0 |

745 Fort Street, Suite 801
Honolulu, Hawai'i 96813
Telephone: (808) 599-3811

**PERKIN & FARIA LLLC**

JOHN F. PERKIN                    1673-0
841 Bishop Street, Suite 1000
Honolulu, Hawai'i 96813
Telephone: (808) 523-2300

**AFFINITY LAW GROUP**

VAN-ALAN H. SHIMA                 8176-0
1188 Bishop Street, Suite 3408
Honolulu, Hawai'i 96813
Telephone: (808) 545-4600

Attorneys for Plaintiff
HENRY VIRGIL PARESA, JR.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| HENRY VIRGIL PARESA, JR., <br><br> Plaintiff, <br><br> vs. <br><br> HSBC BANK USA, N.A. and DOE DEFENDANTS 1-50, <br><br> Defendants. | CIVIL NO. 17-00248-DKW-RLP (Non Vehicle Tort) <br><br> **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST HSBC BANK USA, N.A. ON COUNT II OF COMPLAINT FILED NOVEMBER 21, 2017 (Dkt. 22); CERTIFICATE OF COMPLIANCE; DECLARATION OF JAMES J. BICKERTON; EXHIBITS "A"-"H";** |

**CERTIFICATE OF SERVICE**

**Hearing Date: March 15, 2018**
**Time:  9:30 a.m.**
**Judge: Hon. Derrick K. Watson**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………..i

I.    HSBC'S SUGGESTION THAT THIS COURT SHOULD LIMIT *HUNGATE* TO
      PROSPECTIVE APPLICATION OR THAT THE LAW WAS DIFFERENT IN 2010 IS
      WITHOUT MERIT ……………………………………..…………………......3

II.   HSBC'S ARGUMENT THAT *HUNGATE* DOES NOT APPLY BECAUSE OF
      PARAGRAPH 15 OF THE MORTGAGE IS WITHOUT MERIT.................................. 4

III.  WHETHER OR NOT PLAINTIFF ASKED FOR THE AUCTION TO BE
      POSTPONED IS IRRELEVANT – AND DOES NOT CREATE ESTOPPEL – TO
      THE QUESTION OF WHETHER HSBC FOLLOWED THE LAW IN FAIKING TO
      PUBLISH THE POSTPONED DATE ........................................................................ 6

IV.   HSBC'S SUGGESETION THAT ITS DECISION NOT TO PUBLISH WAS BASED
      ON A "REASONABLE INTERPRETATION" OF THE LAW IS WITHOUT
      SUPPORT IN THE RECORD........................................................................ 7

V.    HSBC'S CAUSATION AND DAMAGES ARE WTIHOUT MERIT ........................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Am., N.A. v. Reyes-Toledo,*
    139 Haw. 361 (2017) ..................................................... 1, 13

*Catron v. Tokio Marine Mgmt., Inc.,*
    90 Haw. 407, 978 P.2d 845 (1999) ...................................................4

*Flores v. Rawlings Co., LLC,*
    117 Hawai'i 153, 177 P.3d 341 (2008)............................................. 13

*Fukida v. Hon/Hawaii Serv. & Repair,*
    33 P.3d 204 (Haw. 2001) ............................................................. 17

*Hungate v. Rosen,*
    139 Haw. 394 (Haw. 2017).................................................*passim*

*In re Kekauoha-Alisa,*
    674 F.3d 1083 (9th Cir.2012) ..................................................... 1, 12

*Kekauoha-Alisa v. Ameriquest Mortgage Co.,*
    2013 WL 773057, 2013 Bankr. Lexis 752 (Bankr. D. Haw. Feb.
    27, 2013) ........................................................... 10, 13, 14

*Kila v. Kahuhu,*
    8 Haw.212 (Haw. Kingdom 1891)..................................................... 12

*Knodle v. Waikiki Gateway Hotel,*
    69 Haw. 376 (Haw. 1987)................................................................. 11

*Kondaur Capital Corp. v. Matsuyoshi,*
    136 Haw. 227 (Haw. 2015)................................................................ 13

*Lucas v. Liggett & Myers Tobacco Co.,*
    51 Haw. 346, 461 P.2d 140.............................................................. 12

*Miles v. Deutsche Bank National Trust Co.,*
    186 Cal. Rptr. 3d 625 (Cal. App. 2015)....................................... 14, 15

*Mount v. Apao,*
    139 Haw. .................................................................................... 12

*O'Grady v. State,*
    140 Haw. 36, 398 P.3d 625 (2017) ............................................. 10, 13

*Roxas v. Marcos,*
    81 Haw. 91 (1998) ........................................................................ 11

*Silva v. Homen,*
    9 Haw. 14 (1893) ...........................................................................9

*Silva v. Lopez,*
    5 Haw. 262 (Haw. 1884)....................................................... 9, 12, 16

*Wells Fargo Bank, N.A. v. Erum,*
    140 Haw. 418 (Haw. Ct. App. 2017), *vacated on other grounds,*
    2017 Haw. App. Lexis 462 (Haw. Ct. App. Nov. 17, 2017) ............. 12

*Widemann v. Thomas,*
    10 Haw. 366 (Haw. 1896)............................................................. 12

**Statutes**

Applicable Law ..................................................................... 4, 5

HRS Section 501-212.................................................................9

HRS Section 667-5(d) ............................................................ 4, 5

OR THAT THE LAW.................................................................3

WHETHER HSBC FOLLOWED THE LAW.........................................6

**Other Authorities**

First, *Silva II*...........................................................................9

*Rest. 3d of Restitution*, § 3 cmts a & b................................................ 17

*Restatement 3d of Restitution*.......................................................... 16

*Restatement 3d of Restitution*, § 51(2) ................................................ 15

*Restatement 3d of Restitution*, § 51 cmt. d............................................................... 16

*Restatement (Second) of Agency* §402 and Comments........................................... 12

*Restatement (Second) of Torts*, Section 927 ......................................................... 11

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST HSBC BANK USA, N.A. ON COUNT II OF COMPLAINT FILED NOVEMBER 21, 2017 (Dkt. 22)**

The opposition memorandum filed by HSBC Bank, N.A. ("HSBC") reflects a basic misunderstanding of wrongful foreclosure law. This was a *non-judicial* foreclosure. In such cases, the law provides *strict* safeguards to protect homeowners because, at the time of the foreclosure, there is *no judicial oversight*. The sole protection the homeowner has is the rule of *strict* compliance. That rule means that if the power and the statute are not followed strictly, there is simply no power to foreclose at all, and any foreclosure is wrongful. *See* Footnotes 6, 7 and 8 of Plaintiff's 11/21/17 Memorandum. "In order to prove entitlement to foreclose, the foreclosing party must demonstrate that *all* conditions precedent to foreclosure under the note and mortgage are satisfied and that *all* steps required by statute have been *strictly* complied with."[1] As *Silva I* and *II* made clear, this strictness means that where the power of sale is not followed – even if the mortgagor's debt remains unpaid and the property "could have been" properly foreclosed – the mortgagor is entitled to either the return of the property or to be paid its value.

This result is without regard to whether the defendant might, in some other

---

[1] *Bank of Am., N.A. v. Reyes-Toledo*, 139 Haw. 361, 367 (2017) (emphasis added)); *see also In re Kekauoha-Alisa*, 674 F.3d 1083, 1091 (9th Cir.2012)("[t]he bankruptcy court read the mortgage contract as requiring compliance with the nonjudicial foreclosure statute as a condition precedent to Lenders' right to exercise the power of sale in the contract. We agree.").

alternative history, have been entitled to or able to foreclose lawfully. The "strictness" built into the law does not contemplate any difference between a foreclosure done without authority because there was no power of ale and one done without authority because the power of sale was not followed. In each case, the plaintiff lost his or her property and the cause of *that* loss was an unauthorized and unlawful sale. The loss is not obviated because the defendant might eventually have performed a correct foreclosure; the facts are that no correct foreclosure was ever done and, until it is done, the Plaintiff who suffered a wrongful loss of property is entitled to the remedies therefor. To this day, Defendant HSBC has never lawfully sold the property, yet Plaintiff has been deprived of the title and possession.

HSBC took its chances by choosing to act outside of the judicial system, instead of using the judicial foreclosure process, and must answer for failing to strictly follow the power and the statute. HSBC's view, in which it (a) can argue with the mortgagor over the meaning of ¶¶15 and 22 of the mortgage, and (b) can break the law freely if it conducts its unlawful sale on a date when the property is "underwater," would obviate the "strictness" that Hawai'i law plainly requires.

Plaintiff notes that Circuit Judge Robert Kim has issued detailed Findings and Conclusions *granting* an identical motion against a bank and rejecting the bank's contention that there is no "causation" where it forecloses on an underwater

2

property.  *See* **Exhibits "B" and "C"** hereto.  While the rulings of another trial judge are not binding on this Court, they can be of assistance where, as here, they contained reasoned conclusions supported by case authority.

In any event, this is a motion for partial summary judgment on liability.  The Court is not required to determine the precise measure of damages once a breach of duty and resulting harm is established.  It is unquestionable – and HSBC offers no real opposition to the point – that there was a breach and that plaintiff was wrongfully foreclosed because his property was sold on a never-advertised date.  It is further unquestioned that this breach caused plaintiff to lose title and possession.  Thus, harm is established and the Court can, if it chooses, grant summary judgment without ruling on exactly how the damages may be measured at trial if it believes that the record needs more development on that issue.

**I.   HSBC'S SUGGESTION THAT THIS COURT SHOULD LIMIT *HUNGATE* TO PROSPECTIVE APPLICATION OR THAT THE LAW WAS DIFFERENT IN 2010 IS WITHOUT MERIT**

*Hungate* itself said nothing to suggest that it should not be applied to cases that arose before its issuance, and the *Hungate* court plainly applied its ruling to the case before it, which arose from a 2009 sale postponed without publication from April 2009 to August 2009.  *Hungate* is plainly the law of the land and HSBC is in effect inviting this Court to disregard it.  If it is only going to have retroactive effect, that is for the Hawaii Supreme Court to say; until it does, this Court cannot

refuse to apply it. *Catron v. Tokio Marine Mgmt., Inc.*, 90 Haw. 407, 412, 978 P.2d 845, 850 (1999).[2]

If the issue of whether the power of sale required the new auction date to be published was "settled" in 2010, how does HSBC explain why other banks and lawyers who filed Affidavits of Foreclosure (exemplars from the public record attached here as **Exhibits "D," "E" and "F"**) recited that they had published the postponed dates in the newspaper and attached copies of the newspaper's declaration showing the additional publication?

## II.   HSBC'S ARGUMENT THAT *HUNGATE* DOES NOT APPLY BECAUSE OF PARAGRAPH 15 OF THE MORTGAGE IS WITHOUT MERIT

HSBC suggests that ¶15 of the mortgage was not considered by *Hungate v. Rosen*, 139 Haw. 394 (Haw. 2017), and means that its reference to "Applicable Law" allows oral postponements under HRS Section 667-5(d). *See* Opp. at 29-30. HSBC's premise is false – the same argument ***was*** made unsuccessfully in *Hungate* by Deutsche Bank, which had the identical ¶15 in its mortgage.[3]

Furthermore, the *Hungate* Court would have no reason or need to explain its thinking on ¶15 after announcing the general principle that "ambiguity" in the

---

[2] Exhibit "A" attached is the opening brief in *Hungate*, to show the issues before the Court.

[3] Relevant high-lighted pages of Deutsche Bank National Trust Co.'s ("Deutsche Bank") Answering Brief [Dkt 45] filed on 11/21/2014 in *Hungate* are attached hereto as **Exhibit "A"**.

mortgage "should be resolved against" the mortgagee, so that "the ***more stringent interpretation***" prevails.[4]   The very first sentence of ¶15 states: "***All*** notices given by Borrower or Lender in connection with this Security instrument must be in writing." (Emphasis added).   In light of its first sentence, the last sentence of ¶15 can reasonably be read to mean "If any **[written]** notice required by this Security Instrument is also required under Applicable Law, . . . ."

The only announcement HRS § 667-5(d) contemplates is an ***oral*** one, which by definition could not be a "notice" required by the mortgage.   In other words, Applicable Law does not require any ***written*** notice of postponement, so the last sentence of ¶15 is inapplicable to postponement "notices".   Accordingly, the "more stringent" interpretation of ¶15 is that it does not authorize the lender to short circuit Paragraph 22's power of sale requirement of a published notice of any postponed sale and, under *Hungate*, this is the interpretation that must be adopted.

¶22 leads to the same conclusion because it distinguishes the act of "noticing" ***the borrower*** of a sale[5] from the act of "publishing" the sale's time, place, and terms.[6]   ¶22 provides that the first act – noticing the borrower – may be

---

[4] *Hungate*, 139 Haw. at 404, (emphasis added), citing and quoting *State Sav. & Loan Ass'n v. Kauaian Dev. Co.*, 62 Haw. 188, 198, 613 P.2d 1315, 1322 (1980) ("[A]ny ambiguity in a mortgage instrument should be construed against the party drawing the documents").

[5] "Lender shall give Borrower notice of sale in the manner provided in Section 15."

[6] "Lender **shall publish a notice of sale** and shall sell the Property at the time and place and under the terms specified in the notice of sale."   (Emphasis added).

accomplished "in the manner provided in" ¶15.  However, ¶22 ***does not*** contain a similar directive to consult ¶15 when instructing the lender ***to publish***, a difference that must be construed against HSBC under *Hungate*.

**III.    WHETHER OR NOT PLAINTIFF ASKED FOR THE AUCTION TO BE POSTPONED IS IRRELEVANT – AND DOES NOT CREATE ESTOPPEL – TO THE QUESTION OF WHETHER HSBC FOLLOWED THE LAW IN FAIKING TO PUBLISH THE POSTPONED DATE**

HSBC argues that Plaintiff is estopped or "quasi" estopped because ***he*** asked for the postponement of the auction from its original date of January 28, 2011 to February 11, 2011.  HSBC cites its Exhibit "M" (presumably Doc 32-35, p. 3 of 3) for the proposition that Plaintiff asked for an extension.  But even this factual predicate does not appear accurate.  The document does not indicate who asked for the postponement and a fair reading of the document is that it was an internal request made by Wells Fargo personnel: "FROM: WELLS FARGO HOME MORTGAGE PLEASE ADVISE IF IT WOULD BE POSSIBLE TO POSTPONE SALE 1 WEEK TO ALLOW BORROWER TIME TO DELIVER REINSTATEMENT FUNDS.  PROOF OF FUNDS HAS BEEN RECEIVED. THANK YOU."  Id at p. 3.  A subsequent entry on January 31, 2011 indicates that the postponement request came from the lawyer's client, someone that obviously would not include Mr. Paresa.

In any event, it is plainly irrelevant to whether a postponement was done legally or not that a postponement was requested by either the borrower or the lender. Once a decision is made to postpone, it must still be done in accordance with law. Asking for a postponement does not give the bank a pass to postpone *in an unlawful manner*. Nor would it estop the person requesting the postponement from complaining when it was done in an unlawful manner; HSBC does not suggest that there was anything preventing it from doing it lawfully. Accordingly HSBC's "estoppel" or "quasi" estoppel argument is factually *and* legally without merit.

## IV. HSBC'S SUGGESTION THAT ITS DECISION NOT TO PUBLISH WAS BASED ON A "REASONABLE INTERPRETATION" OF THE LAW IS WITHOUT SUPPORT IN THE RECORD

HSBC argues against the claim for punitive damages, even though the motion does not seek any relief with respect to punitive damages. Plaintiff is puzzled by the argument and believes it has no place in this motion, but responds to it briefly here in an abundance of caution. HSBC suggests – HSBC memorandum at 25-26, that punitive damages have no place here because the wrongful act was in essence a reasoned decision by its lawyers not to publish the auction date in this case based on some reasoned legal analysis. However, Exhibits "G" and "H" attached hereto show that the lawyer here, Hillery Parker, did publish the postponement in other cases. Indeed, **Exhibit "F"** shows that Ms. Parker

published a postponement for Wells Fargo bank, N.A., the entity that appears to have been the servicer for HSBC in this case.

HSBC presents no evidence that Parker or her firm somehow "decided" in this case that the law did not require publication.  A more reasonable inference is that they consciously decided not to follow their usual practice here or were instructed by HSBC not to do what they had done for other lenders.   Either inference would create an issue of fact on punitive damages if this was a motion by HSBC.  But it is a motion by Plaintiff on the question of liability, not punitive damages, and hence the Court need not address it.

## V.    HSBC'S CAUSATION AND DAMAGES ARE WITHOUT MERIT

HSBC's primary arguments are ones on causation and damages.  But HSBC misunderstands the Motion; Plaintiff does not seek summary judgment on the ***amount*** of his damages – he expressly leaves that to the jury.  To award summary judgment on liability, movants need only show that there has been a breach and that the breach caused harm.  Here the nature of the harm is well understood by the Hawaii cases – Plaintiff lost title and possession to his home by way of an unlawful and invalid sale.  Whether the jury decides to award $10 or $400,000 in damages for those harms and whether the defendant has some offset for the damages is not required to be decided by Court on this limited motion, even though Plaintiff has urged the adoption of certain measures of damages.

HSBC first argues that *Silva* requires Plaintiff to first pay his mortgage (Opp. at 12, citing *Silva II*) and then argues that:

> Plaintiff contends he is entitled to be forgiven the entire balance of his mortgage and the additional default fees that accrued, as well as be awarded the total rental value for the period since the foreclosure sale, all because HSBC publicly announced the foreclosure sale postponement instead of publishing it in a newspaper.

Opp. at 13 (emphasis in original). This mischaracterizes both *Silva II* and Plaintiff's claim. First, *Silva II* said there must be an "accounting" for the amount due under the mortgage ("an account must be taken of the amount of principal and interest due, 5 Haw at 429) and, if it is not paid off, it must be paid at the time of the new sale (upon the resale "proceeds [be] paid into Court, unless the amount found to be due is previously paid"). That is the relief Plaintiff would be entitled to if the property was not land court property.[7] And plaintiff clearly alleges in Paragraphs 23 and 39 of the complaint that HSBC remains the mortgagee; he does not seek to recover the property free and clear of any debt.

HSBC also seems to argue that all damages are caused by the debtor's default, ignoring that the protections in the power of sale that the law upholds are there primarily to protect defaulters. In 99.9 percent of foreclosures the debtor is in default; wrongful foreclosure law has not been developed solely to protect those

---

[7] HRS Section 501-212 expressly holds that claims in tort for damages may are not affected by the land court statute. Plaintiff acknowledges that the land court nature of the property may affect remedies such as return of title and possession.

who are not in default.  A mortgage is not rent, where a nonpayment entitles a landlord to evict.  Plaintiff is the owner of his property; HSBC was merely a secured creditor who had to act strictly within the power if it wanted self-help or else be treated as an outlaw.

The view that default is irrelevant to whether harm is caused is confirmed by the fact that in *Hungate*, the Supreme Court held that "the factfinder could determine [the plaintiff] was injured by the foreclosure sale, which eliminated equity that [he] held in the property and prevented him from using the property," even though the plaintiff never denied missing his mortgage payments.  *See* 139 Haw. at 412.  Likewise, in *Kekauoha-Alisa v. Ameriquest Mortgage Co.*, 2013 WL 773057, 2013 Bankr. Lexis 752 (Bankr. D. Haw. Feb. 27, 2013), the bankruptcy court reasoned that foreclosing mortgagees who failed to properly postpone the plaintiff's foreclosure auction caused the plaintiff to lose her property before her lenders were entitled to take it, and awarded the plaintiff damages for her loss of use despite her default.

HSBC's next argument is to posit that the only damages are the difference between a publicized sale date and an unpublicized sale date, an argument that Plaintiff foresaw in his motion papers of November 21, 2017.  Plaintiff notes again that this approach – proving that there would have been some different outcome – is a "but for" causation analysis that contravenes *O'Grady v. State*, 140

Haw. 36, 398 P.3d 625 (2017) and its clear holding that courts should not analyze causation in this fashion. *See also Knodle v. Waikiki Gateway Hotel*, 69 Haw. 376, 392 (Haw. 1987) (remanding for new trial because jury instruction was "a variant of the 'but for' rule").

Second, HSBC's approach disregards how "causation" works with ***torts that involve the wrongful deprivation of property interests***: the loss is the loss of the property interest, so causation is built into the tort once completed. *See, e.g., Restatement (Second) of Torts*, Section 927. It is interesting to note that HSBC does not touch Section 927 of the *Restatement* with a ten-foot pole. It makes no attempt to refute Plaintiff's reliance on that clear law, which applies to chattels and real property alike and has been cited with approval by the Hawaii supreme Court in the chattel context. *See Roxas v. Marcos,* 81 Haw. 91 (1998).

In short, "causation" is ***automatic*** once the plaintiff proves the property was unlawfully taken or sold. HSBC overlooks the law cited by Plaintiff that clearly provides the remedy for sales of the property of another when not authorized by law, although it seems to have no trouble recalling these cases when asserting its defense of "offset". (*See Johnson, Silva I* and *II, Santiago*). In addition to these authorities, Plaintiff notes that in other contexts where the law gives one person the power to sell another's property without resorting to the court first, that power is also "strictly" enforced and the owner may recover "full value" or "market value"

11

when the sale violates the law. *Kila v. Kahuhu*, 8 Haw.212 (Haw. Kingdom 1891)("full value"); *Widemann v. Thomas*, 10 Haw. 366, 372 (Haw. 1896)("market value"). *Cf. Restatement (Second) of Agency* §402 and Comments e & g (principal can hold agent liable for ***full value*** of land sold where agent sold "at an undesignated time"). The dollar amount of this value, or of any claimed offset, is not a subject of this motion.[8]

Whether a homeowner's loss of title and possession in foreclosure is rightful or wrongful turns on whether the mortgagee strictly complied with the following requirements: *(1)*   The foreclosing mortgagee must strictly comply with the power-of-sale clause in the mortgage. *See Hungate*, 139 Haw. at 404; *Silva v. Lopez*, 5 Haw. 262, 264-265 (Haw. 1884); *Wells Fargo Bank, N.A. v. Erum*, 140 Haw. 418 (Haw. Ct. App. 2017), *vacated on other grounds*, 2017 Haw. App. Lexis 462 (Haw. Ct. App. Nov. 17, 2017); *(2)* The foreclosing mortgagee must strictly comply with the non-judicial foreclosure statute. *See Mount v. Apao*, 139 Haw. at 179-180; *Kekauoha-Alisa v. Ameriquest Mortg. Co.*, 674 F.3d 1083, 1089-1090

---

[8] Although the cited authorities indicate that the relevant market value is ***current*** market value, Hawaii's chattel foreclosure cases suggest that the value may be the value at the time of the wrongful sale ***plus interest*** at the judgment rate to the time of trial. *See Lucas v. Liggett & Myers Tobacco Co.*, 51 Haw. 346, 349, 461 P.2d 140, 143(1969), citing *Silva v. Homen*, 9 Haw. 14 (1893) ("The measure of damages is the value of the goods at the time of conversion, with interest to the time of trial").

(9th Cir. 2012); [9] *cf. Bank of America v. Reyes-Toledo*, 139 Haw. at 367; *(3)* The foreclosing mortgagee who purchases property at its own self-sale (as HSBC did) must prove that it sold in a manner that was fair, reasonably diligent, and in good faith, ***and*** that an adequate price was procured for the property. *Kondaur Capital Corp. v. Matsuyoshi*, 136 Haw. 227, 240 (Haw. 2015); *Hungate*, 139 Haw. at 408.

Correlatively, because the foregoing three requirements for a valid foreclosure must be strictly performed, ***any*** mis-step by the mortgagee renders the sale invalid and ***naturally*** becomes a "substantial factor" in causing a homeowner to lose title and possession.  Moreover, in light of the strict compliance standard, the "substantial factor" test "***does not*** demand that Plaintiff "refute the hypothetical that, even if [HSBC] had satisfied its duties, the [foreclosure] would have occurred anyway," *O'Grady*, 140 Haw. at 50, since any defect would invalidate the sale and would thus be a "cause in fact" of Plaintiff's wrongful loss of the Property.  These principles were clearly enunciated and applied in *Kekauoha-Alisa v. Ameriquest Mortgage Co.*, 2013 WL 773057, 2013 Bankr. Lexis 752 (Bankr. D. Haw. Feb. 27, 2013), (after the remand from the Ninth Circuit decision that HSBC relies on for its

---

[9] HSBA cites *Kekauoha* for a "causation" test.  Opp. at 16.  Plaintiff notes, however, that the *dicta* in the Ninth Circuit's opinion in *Kekauoha* about "fairly traceable" was a reference to a standing analysis in *Flores v. Rawlings Co., LLC,* 117 Hawai'i 153, 177 P.3d 341, 355 n. 23 (2008), not to the causation test applicable to tort claims.  The Ninth Circuit mistakenly conflated the two tests.  In any event, whatever the test, *O'Grady* makes clear that it cannot be a "but for" one like the Ninth Circuit's discussion in *Kekauoha* suggested.

"but for" causation argument about impact on price), where the bankruptcy court reasoned that foreclosing mortgagees who failed to properly postpone the plaintiff's foreclosure auction caused the plaintiff to lose her property ***before her lenders were entitled to take it***, and awarded loss of use damages:

> The problem with this argument [that the Debtor's default caused her loss] is that it ignores the factor of time. Whether or not the Debtor was able to make the mortgage payments, the Debtor was entitled to the use and ownership of the property until the Lenders properly foreclosed their mortgage. ***The Lenders have never properly completed a foreclosure. Therefore, the Lenders unlawfully took the Debtor's property about seven years before they were entitled to do so***. The Lenders' failure to give a proper postponement notice, and their resulting failure to conduct a valid and lawful foreclosure, caused the Debtor to lose the use of the property from the date of the void foreclosure until now, . . . .

See *Kekauoha-Alisa*, 2013 WL 773057, 2013 Bankr. Lexis 752, *supra*, at *2-*6 (emphasis added).

Moreover, even California courts (which do not follow Hawaii's "strict" rule) do not apparently endorse HSBC's proposition that a wrongful foreclosure practice causes no injury if there is no equity in the property. In *Miles v. Deutsche Bank National Trust Co.*, 186 Cal. Rptr. 3d 625 (Cal. App. 2015), the court rejected the trial court's conclusion that "the only permissible damages in a wrongful foreclosure suit is the lost equity in the home, and where there is no equity, no cause of action will lie." *See id.* at 635. Instead, *Miles* held that because "wrongful foreclosure is a tort," "[w]rongfully foreclosing on someone's home is

14

likely to cause other sorts of damages, such as moving expenses, lost rental income

. . . , and damage to credit.  It may also result in emotional distress . . .  and, upon a

proper showing . . . punitive damages."  *See id.* at 636-637 (2015) (citations and

quotations omitted).

In addition to traditional damages, a wrongful foreclosure victim is entitled

to seek "restitution."  The Court confirmed in *Hungate* that "[w]hen voiding the

foreclosure is not possible, the mortgagor is entitled to 'restitution of their proven

out-of-pocket losses' through a wrongful foreclosure claim."  *See Hungate*, 139

Haw. at 407.  An award of restitution may account for both (1) the market value

and (2) loss of use of property that is wrongfully taken.  As to the first measure of

restitution, "[t]he value for restitution purposes of benefits obtained by the

misconduct of the defendant, culpable or otherwise, is not less than their market

value."  *Restatement 3d of Restitution*, § 51(2); *see also id.* § 49(3) (for

"nonreturnable benefits," "[e]nrichment....may be measured by...the market value

of the benefit").

> The use of market value to fix a minimum liability in restitution is
> most often pertinent in cases involving conscious wrongdoers, but it
> applies to any case in which enrichment results from misconduct, with
> or without culpability, on the part of the defendant. Enrichment from
> benefits wrongfully obtained is not discounted to reflect some lesser
> value actually realized in advancing the purposes of the defendant. . . .
> . So long as benefits wrongfully obtained have an ascertainable market
> value, that value is the minimum measure of the wrongdoing
> defendant's unjust enrichment, even if the transaction produces no

ascertainable injury to the claimant and no ascertainable benefit to the defendant. . . .

*Restatement 3d of Restitution*, § 51 cmt. d; *see also Silva II*, 5 Haw. at 429

(because defendant held  foreclosure sale one day too early, plaintiff was "entitled

to have the property returned to him *or to be paid its value*" (emphasis added)).  As

to the second measure of restitution (loss of use),

> [a] person who is liable to make restitution of property or its value is liable for supplemental enrichment in the form of interest, rent, or other measure of use value, to the extent that such further enrichment is either realized in fact or appropriately presumed. Enrichment of this kind may be presumed in the case of a recipient who is enriched by misconduct or who is otherwise responsible for the enrichment in question.

*Restatement 3d of Restitution, supra*, § 53(1) (citations omitted).  Supplemental

enrichment for lost use "may be presumed" under § 53(1) because HSBC was

"enriched by misconduct," which is defined as "obtain[ing] a benefit by an act of

trespass or conversion, [or] by comparable interference with other protected

interests in tangible property," *id.* §§ 40, 51(1).

HSBC does not directly address Plaintiff's prayer for restitution: instead, its

objection is that even if it mishandled Plaintiff's foreclosure, its misconduct could

not have caused Plaintiff's damages because he suffered no loss of "equity".  Yet

restitution also permits "a claimant [to] potentially recover[] more than a provable

loss so that the defendant may be stripped of a wrongful gain," and thus "affords

remedial or procedural advantages by comparison with an action for damages."
*Rest. 3d of Restitution*, § 3 cmts a & b.

According to HSBC, "Plaintiff cannot recover both an amount equivalent to the net value of the Property and 'lost rental value.'" Opp. at 24. However, HSBC has failed to read *Fukida v. Hon/Hawaii Serv. & Repair*, 33 P.3d 204, 211 (Haw. 2001), which it attempts to distinguish as "simply" about whether there is a cap on lost rental at the value of the property. In fact, *Fukida* also clearly held that Hawaii will follow the minority (but expanding) view that the victim of a wrongfully exercised lien may recover the lost rental value regardless of whether the property (or its value) is returned.

Ultimately, HSBC's position is that the homeowner who is in default "underwater" at the time of the unlawful sale has no remedy – he can recover neither the value of the home ***nor*** the loss of its use. But this grant of a free pass to mortgagees to violate the law is inconsistent with the "strictness" that Hawaii law requires and it fails to recognize the consequences of an unlawful sale of the property of another.

DATED: Honolulu, Hawaii, March 1, 2018.

/s/ James J. Bickerton
JAMES J. BICKERTON
STANLEY H. ROEHRIG
BRIDGET G. MORGAN
JOHN F. PERKIN
VAN-ALAN H. SHIMA

Attorneys for Plaintiff
HENRY V. PARESA, JR.