IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| HENRY VIRGIL PARESA, JR.,<br><br>    Plaintiff,<br><br>vs.<br><br>HSBC BANK USA, N.A.,<br><br>    Defendant. | CIVIL NO. 17-00248 DKW-RLP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT II** |

## <u>INTRODUCTION</u>

Paresa seeks partial summary judgment on his Count II tortious wrongful foreclosure claim based upon HSBC's admitted failure to publish written notice of postponement of a nonjudicial foreclosure sale.   Because the Hawaii Supreme Court has determined that such a failure constitutes wrongful foreclosure (*see Hungate v. Law Office of David B. Rosen*, 139 Hawai'i, 394, 407, 391 P.3d 1, 14 (2017)), the Court GRANTS the Motion only with respect to liability on Count II. The Motion is DENIED to the extent it seeks an advisory ruling regarding the scope or measure of damages for that claim.

## BACKGROUND

## I.   Factual Background

### A.   Paresa's Mortgage and Default

Paresa purchased real property located at 2888 Ala Ilima Street #2602,

Honolulu, Hawaii 96813 (the "Property") on March 28, 1988.   The conveyance was

recorded in the Office of the Assistant Registrar of the Land Court, State of Hawaii

("Land Court") on March 30, 1988, as Document No. 1539544, and noted on

Certificate of Title No. 321,363.[1]   According to Paresa, the Certificate of Title was

for the entire condominium building and a new certificate issued for the entire

property of the condominium building on November 21, 1988, as certificate No.

321,363.[2]   *See* Paresa Mem. in Supp. at 2; Paresa Ex. 2 (Certificate of Title No.

321,363), Dkt. No. 23-3.

---

[1]Hawaii Land Court is a court of limited jurisdiction created for the special purpose of carrying into effect the Torrens title system of land registration.   *See Tilley v. Bank of New York Mellon*, 2018 WL 1415171, at *5 (D. Haw. Mar. 21, 2018) (citing *Wells Fargo Bank, N.A. v. Omiya*, 398 P.3d 838, *5 (Haw. App. July 24, 2017)).   Hawaii Revised Statutes ("HRS") Chapter 501 provides for the registration of title with the Land Court, "under which, upon the landowner's application, the court may, after appropriate proceedings, direct the issuance of a certificate of title."   *Tilley*, 2018 WL 1415171, at *5 (citing *In re Campbell*, 66 Haw. 354, 662 P.2d 206, 208–09 (Haw. 1983)).   The "purpose of the registration system is to conclusively establish title to land through the issuance of a certificate of title."   *Tilley*, 2018 WL 1415171, at *5 (citing *Bank of New York Mellon v. R. Onaga, Inc.,* 400 P.3d 559, 569 (Haw. 2017)).

[2]In light of Paresa's representation that one certificate issued for the *entire* condominium building on November 21 1988, as certificate No. 321,363, and that the various conveyances, Mortgages, and Assignments in this matter were recorded in Land Court and noted on Certificate of Title No. 321,363 (Paresa Ex. 2), it does not appear from the record before the Court that new Transfer Certificates of Title were issued when Paresa lost title and possession of the Property following the nonjudicial foreclosures conducted by the Five Regents AOAO in 2009 (HSBC Ex. N, Dkt. No.

To finance the purchase of the Property, Paresa obtained a loan secured by a Mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for lender New Century Mortgage Corporation, and executed an Adjustable Rate Note in the amount of $90,000 ("Note"). The Mortgage was recorded in Land Court on November 29, 2006, as Document No. 3520036, and noted on Certificate of Title No. 321,363. Paresa Ex. 3 (Recorded Mortgage); Dkt. No. 23-4.

Beginning in mid-2007, and continuing throughout 2008, the loan servicer sent numerous letters to Paresa notifying him that he was in default and advising him that the Mortgage would be accelerated if he did not cure the default. *See* Decl. of Shae Smith, Ex. B (6/25/2007 Letter), Dkt. No. 32-14; Ex. C (11/19/2007 Letter), Dkt. No. 32-15; Ex. D (3/17/2008 Letter), Dkt. No. 32-16; Ex. E (9/21/2008 Letter), Dkt. No. 32-17; Ex. F (10/19/2008 Letter), Dkt. No. 32-18; Ex. G (11/16/2008 Letter), Dkt. No. 32-19. Paresa, however, was not able to cure the default.

---

32-26) or HSBC in 2011 (Paresa Exs. 6-8). HRS § 501-118 addresses the ability to challenge foreclosure proceedings affecting a property registered in Land Court. *See also Aames Funding Corp. v. Mores*, 107 Hawai'i 95, 110 P.3d 1042 (2005); *Tilley*, 2018 WL 1415171, at *7; *Seegers v. CIT Bank N.A.*, 2018 WL 1558550, at *4 (D. Haw. Feb. 28, 2018) (discussing, in the context of Land Court registered property, the ability of a plaintiff to bring a wrongful foreclosure claim for money damages after the issuance of new transfer certificate of title). Paresa "acknowledges that the land court nature of the property may affect remedies such as return of title and possession." Paresa Reply at 9, n.7, Dkt. No. 33.

In 2009, HSBC was assigned the Mortgage. The Assignment of Mortgage from MERS to HSBC was recorded in Land Court on May 5, 2009 as Document No. 3854486, and noted on Certificate of Title No. 321,363. Paresa Ex. 4 (Assignment), Dkt. No. 23-5. According to Paresa, as the assignee of the Mortgage, HSBC also claimed to be a mortgagee or successor to a mortgagee entitled under former HRS, Chapter 667 Part I (2008), to exercise the power of sale in the Mortgage. Paragraph 22 of the Mortgage contains the power of sale provision at issue, which provides in part:

> If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the power of sale, Lender shall give Borrower notice of sale in the manner provided in Section 15. Lender shall publish a notice of sale and shall sell the Property at the time and place an under the terms specified in the notice of sale. Lender or its designee may purchase the Property at any sale.

Mortgage ¶ 22.

Paragraph 15 in turn mandates that all notices "must be in writing" and provides:

> If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law Requirement will

> satisfy the corresponding requirement under this Security
> Instrument.

Mortgage ¶ 15. "Applicable Law" is defined in the Mortgage as "all controlling

applicable federal, state and local statutes, regulations, ordinances and

administrative rules and orders (that have the effect of law) as well as all applicable

final, non-appealable judicial opinions." Mortgage ¶ I.

Paresa contends that HSBC undertook to exercise that power of sale for its

own benefit, but did not satisfy the conditions precedent to the valid exercise of the

power or the statute regulating it, former HRS § 667-5.

### B.    Non-Judicial Foreclosure

On December 10, 2010, HSBC recorded a Notice of Mortgagee's Intention to

Foreclose Under Power of Sale ("Notice") in the Hawaii Bureau of Conveyances,

and served the Notice on Paresa four days later. HSBC Ex. 3 (Mortgagee's

Affidavit; Ex. B. (Return of Service, dated 12/14/10); Ex. E (Notice, recorded on

12/10/10)), Dkt. No. 32-4.[3] HSBC published notice of the foreclosure sale in the

Honolulu Star-Advertiser on December 17, 24, and 31, 2010. Mortgagee's

Affidavit, Ex. G. (Aff. of Publication, dated 1/3/11). Prior to the scheduled January

28, 2011 auction, Paresa attempted to negotiate a loan modification with the loan

---

[3]The Mortgagee's Affidavit was recorded in Land Court, on March 10, 2011, as Document No. 4055746. HSBC Ex. 3 (3/10/11 Mortgagee's Aff. of Foreclosure Sale Under Power of Sale), Dkt. No. 32-4.

servicer, explaining that "[m]y monthly debt payments are excessive and I have overextended myself with my creditors." Smith Decl., Ex. J (1/11/2011 Hardship Aff.), Dkt. No. 32-22. Paresa submitted a Hardship Affidavit, dated January 11, 2011, explaining in part:

> I am requesting review for a loan modification. I am having difficulty making my monthly payment because of financial difficulties.
>
> ****
>
> While this property was my primary home many years ago, most recently I had it rented. As I became behind in payments to the condominium association, the condo association foreclosed on this property in August 2009. I have already faxed the documents relating to this recorded foreclosure to American Servicing Company . . . With the proceeds from the sale of my other property, I will be paying off the condo association and title will be conveyed back to me. American Servicing has been paying the real property taxes and leasehold fee on this property while the condo association foreclosed on the property.
>
> ****
>
> Right now, with my current employment, I am seeking a second job to supplement my income to meet expenses. Income that I have received from my roommate has also helped me pay off some of my debts. I have drastically reduced my spending and expenses. My goal is to keep my property, avoid foreclosure, and pay off my debt. I would like to have the opportunity to have my loan modified so that my payments are more affordable and I can keep my property.

HSBC Ex. J (1/11/2011 Hardship Aff.).

On January 28, 2011, at the place and time originally scheduled for the sale, HSBC's attorney publicly announced the sale was postponed until February 11, 2011. HSBC Ex. 3 (Mortgagee's Aff.). HSBC notified Paresa of the postponement by sending him a letter of the continuance of the auction and of the new auction date. Mortgagee's Affidavit, Ex. H (Continuance Notice). HSBC did not publish any written notice of postponement.

HSBC asserts that the sale was postponed at Paresa's request. The evidence that HSBC relies on, however, is equivocal. The loan servicer's excerpted "Foreclosure Notes for the Loan," in the unadorned format provided to the Court—cataloging raw servicing notes and data entries from January 25, 2011 to February 1, 2011, from multiple sources, with no explanation of the entries—do not show who requested or granted the postponement of the sale.[4] Smith Decl., Ex. M

---

[4]For example, multiple entries reflect a request for a one-week postponement "to allow borrower time to deliver reinstatement funds." One time entry, on January 31, 2011, notes the reason as a "client request to reschedule sale" with no identification of the "client." The raw entries, which appear below, are provided without any explanation of the servicer's internal record-keeping methodology, codes, or the identities of the parties described:

> 01/31/11 12:37:22 K54   FROM: LERNER, SAMPSON ROTHFUSS THE FORECLOSURE SALE WAS CANCELLED BY REGINA ENDSLEY AT LERNER, SAMPSON ROTHFUSS ON 01/31/2011. PREVIOUS SALE DATE: 0 1/28/2011 REASON: CLIENT REQUEST TO RESCHEDULE SALE DESCRIPTION: PLEASE ADVISE IF IT WOULD BE POSSIBLE TO POSTPONE SALE 1 WEEK TO ALLOW BORROWER TIME TO DELIVER REINSTATEMENT FUNDS. PROOF OF FUNDS HAS BEEN RECEIVED.

> 01/31/11 12:36:3 MF0    LERNER, SAMPSON ROTHFUSS (REGINA ENDSLEY) HAS CANCELLED THE PREVIOUSLY SCHEDULED FORECLOSURE. REASON: PLEASE ADVISE IF IT WOULD BE POSSIBLE TO POSTPONE SALE 1 WEEK TO ALLOW BORROWER TIME TO DELIVER REINSTATEMENT FUNDS. PROOF OF FUNDS HAS BEEN RECEIVED.

(Wells Fargo's Mortgage Services Foreclosure Notes for the Loan, dated 1/25/2011 to 2/1/2011), Dkt. No. 32-25. What is clear is that Paresa did not cure the default, and the foreclosure sale took place on February 11, 2011.

HSBC purchased the Property with a credit bit of $102,000 at the public auction held on February 11, 2011. HSBC Ex. 3 (Mortgagee's Aff.). The Property's appraised value was $120,000 as of April 22, 2011, as determined in an

---

01/31/11 12:36:26 MFR NOTES: PLEASE ADVISE IF IT WOULD BE POSSIBLE TO POSTPONE SALE 1 WEEK TO ALLOW BORROWER TIME TO DELIVER REINSTATEMENT FUNDS. PROOF OF FUNDS HAS BEEN RECEIVED.

****

01/27/11 09:41:53 J7R NOTES: PLEASE ADVISE IF IT WOULD BE POSSIBLE TO POSTPONE SALE 1 WEEK TO ALLOW BORROWER TIME TO DELIVER REINSTATEMENT FUNDS. PROOF OF FUNDS HAS BEEN RECEIVED. THANK YOU.

01/27/11 08:45:15 K4Z FROM: LERNER, SAMPSON ROTHFUSS PLEASE BE ADVISED THAT WE HAVE SENT YOUR REQUEST TO POSTPONE THE 1/28/11 SALE TO LOCAL COUNSEL. ONCE POSTPONEMENT IS CONFIRMED, WE WILL UPDATE WITH A NEW SALE DATE. THANKS!!

01/26/11 12:33:28 K57 FROM: WELLS FARGO HOME MORTGAGE -- TRANSFERED FROM PAM DELLER ON 01/26/2011 -- PLEASE ADVISE IF IT WOULD BE POSSIBLE TO POSTPONE SALE 1 WEEK TO ALLOW BORROWER TIME TO DELIVER REINSTATEMENT FUNDS. PROOF OF FUNDS HAS BEEN RECEIVED. THANK YOU.

01/26/11 12:32:46 K56 FROM: WELLS FARGO HOME MORTGAGE -- TRANSFERED FROM PAM DELLER ON 01/26/2011 -- PLEASE ADVISE IF IT WOULD BE POSSIBLE TO POSTPONE SALE 1 WEEK TO ALLOW BORROWER TIME TO DELIVER REINSTATEMENT FUNDS. PROOF OF FUNDS HAS BEEN RECEIVED. THANK YOU.

01/26/11 11:27:12 66F PER F/C LIAISON NOTES: POF HAVE NOT BEEN RECEIVED.

01/26/11 11:00:12 CH3 BWR CALLED CHECK IF PROCESSOR RVCD LETTER TO PAY FULL REINSTATEMENT AMOUNT, BWR WAS ADV BY REP 66F, ADV FC SALE DATE 1/28/11, ADV BWR DENIED LOAN MOD, ADV NEED TO PAY FULL AMOUNT TO THE FC ATTY OFFICE NOT THE PROCESSOR, ADV CALL THE FC ATTY OFFICE GET FULL AMOUNT AND PAY THEM THAT AMOUNT, THEN THE FC WILL BE STOP, BWR STATED HAVE FC ATTY OFFICE PHONE NUMBER.

Ex. M (Foreclosure Notes).

Appraisal and Report Identification on behalf of Premiere Asset Services. Smith Decl., Ex. K (4/22/2011 Appraisal). On November 2, 2011, HSBC conveyed the Property to itself by Mortgagee's Quitclaim Assignment of Condominium Conveyance Document Pursuant to Power of Sale ("Quitclaim Deed"), which was recorded in Land Court on November 23, 2011, as Document No. 4113759. Paresa Ex. 7 (Quitclaim Deed).

On December 23, 2011, HSBC sold the Property to third-party purchasers David Ufai Lao and Caitlyn Sokfan Lao for $118,000. The Limited Warranty Assignment of Condominium Conveyance Document ("Limited Warranty Deed") conveying the Property to the Laos was recorded in Land Court on January 5, 2012, as Document No. 8039093. Paresa Ex. 8 (Limited Warranty Deed).

## II.   **Procedural Background**

On February 10, 2017, Paresa filed a two-count Complaint in state court, which HSBC removed on May 26, 2017. Notice of Removal, Dkt. No. 1. The Complaint alleges that the foreclosure was wrongfully conducted in violation of Chapter 667 and the power of sale in the Mortgage, due to the following deficiencies:

> a)   Plaintiff was not served with a notice of acceleration that complied with Paragraph 22 of the Mortgage;
>
> b)   The notice of intention of foreclosure ("Notice" or "Notice of Sale") published in the newspaper by HSBC did not

contain a description of the Property as required by HRS Section 667-7(a)(l) (2008), . . . ;

    c)    The Notice did not offer buyers of the Property a warranty that the putative mortgagee had the right to sell or that the sale was conducted lawfully in compliance with the applicable statute and the power of sale;

    d)    HSBC never published any date on which the Property was actually sold, in violation of Paragraph 22 of the Mortgage which stated that the mortgagee "shall sell" at the time specified in the published notice;

    e)    HSBC never held an auction on a published date, in violation of Paragraph 22 of the Mortgage which stated that the mortgagee "shall sell" at the time specified in the published notice;

    f)    HSBC never issued a written notice to the public of any postponed auction date, despite the requirement of Paragraph 15 of the Mortgage that "all notices" in connection with the Mortgage be "in writing" and state law requiring a "public announcement" of any postponement;

    g)    The date when the Property was purportedly sold to HSBC was never published in a newspaper or otherwise in writing to the public; and

    h)    The Foreclosure Affidavit fails to show that HSBC used diligent efforts to secure the best price.

Compl. ¶ 19, Dkt. No. 1-5.

Count II, the subject of this Motion, alleges in relevant part:

    50.    The deeds from HSBC to itself and from HSBC to the Laos separately caused new damage to Plaintiff to the extent they placed the Property beyond Plaintiff's reach and ability to recover possession, which reach and ability he would have

had if HSBC had not purported to convey the Property to itself and then to the Laos, in contravention of its continuing duties under the power of sale not to sell the Property except after having conducted a lawful published auction and only to the winning bidder at such a lawful published auction.

51. Had HSBC acted honestly and fairly in accordance with its duties as mortgagee, the Laos would not have purchased the Property.

52. The conveyances from HSBC to itself and from HSBC to the Laos were separate acts in violation of HSBC's continuing duties as mortgagee (or one controlling the acts of the mortgagee), which duties had not ended because no lawful published auction ever occurred.

53. As a direct and proximate result of the wrongful acts of HSBC described herein, Plaintiff lost possession of, title to, use of and occupancy of the Property. The purported transfer of title to HSBC and the subsequent purported transfer of record title and possession to the Laos constituted a wrongful foreclosure and a conversion of the Property and deprived Plaintiff of his record title and possession of said Property.

54. As a direct and proximate result of the wrongful acts described above, Plaintiff lost the market value of his Property, and lost the use and rental value of his Property from and after the date he lost possession, all in amounts to be proved at trial.

55. By virtue of the foregoing, HSBC is liable to Plaintiff for wrongful foreclosure and conversion, and Plaintiff is entitled to recover as damages the aforementioned losses sustained as a result of the above-described conduct in amounts to be proved at trial and further to receive all proceeds and profits that HSBC made or received by virtue of its wrongful sale.

Compl., Dkt. No. 1-5.

Paresa seeks partial summary judgment on Count II on the limited issue of liability due to HSBC's failure to publish written notice of any new sale date to the public following the postponement of the advertised January 28, 2011 auction. Although Paresa's Motion also seeks judgment that he is entitled to damages equal to the "full value" of the Property plus his "lost rental value" from the February 2011 foreclosure sale to the present, he acknowledged at the March 15, 2018 hearing that the measure of damages, and the scope and the extent of any injury, are properly left for another day. *See* 3/15/2018 Hrg. Tr. at 26, 32, Dkt. No. 35; *see also* Paresa Reply at 3 ("[T]his is a motion for partial summary judgment on liability. The Court is not required to determine the precise measure of damages once a breach of duty and resulting harm is established.").

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a "party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

<u>**DISCUSSION**</u>

Because HSBC failed to publish notice of postponement of the January 28, 2011 original sale date, causing an improper sale to occur on February 11, 2011, HSBC breached its obligations under the power of sale clause and the former HRS Chapter 667 Part I.   As a result, the sale occurred on a date sooner than it lawfully should have, and Paresa is entitled to partial summary judgment with respect to liability on his Count II wrongful foreclosure claim.   In light of the current record, however, the Court declines to find that Paresa is entitled to any single measure of damages and denies the Motion without prejudice with respect to damages.

**I.      Paresa Is Entitled to Partial Summary Judgment With Respect to Liability on his Count II Wrongful Foreclosure Claim**

The Court first outlines the applicable framework for the tort of wrongful foreclosure, with particular attention to the cause of action specifically recognized in *Hungate v. Law Office of David B. Rosen*, 139 Hawaiʻi, 394, 407, 391 P.3d 1, 14 (2017).   In view of this framework, the Court then discusses why Paresa is entitled to summary judgment with respect to liability on Count II based upon the failure to publish written notice of postponement of the sale.

**A.      <u>Legal Framework</u>**

Hawaiʻi courts recognize the tort of wrongful foreclosure against a foreclosing mortgagee.   *See, e.g.*, *Santiago v. Tanaka*, 137 Hawaiʻi 137, 158–59,

366 P.3d 612, 633–34 (2016) (recognizing that the nonjudicial foreclosure was wrongful and that mortgagor was entitled to restitution).[5]   Indeed, only a year ago, the Hawaiʻi Supreme Court not only confirmed that a mortgagor could assert a wrongful foreclosure claim against a mortgagee, but did so based on similar facts and on the same standard power of sale and notice provisions that are present in Paresa's Mortgage.   *Hungate*, 139 Hawaiʻi at 407, 391 P.3d at 14.

In *Hungate*, the attorney for the foreclosing mortgagee "postponed the sale a total of four times in 2009. . . . These dates were never published.   Whether the postponement was publicly announced to the bidders who attended each sale date, as required by HRS § 667-5(d), [was] contested."   *Hungate*, 139 Hawaiʻi at 400, 391 P.3d at 7.   The state circuit court granted in part the foreclosing mortgagee's motion to dismiss Hungate's first amended complaint[, ruling] that (1) [the mortgagee]

---

[5]In *Galima v. Ass'n of Apartment Owners of Palm Court by & through Bd. of Directors*, another court in this district explained:

> "A plaintiff may bring a wrongful foreclosure claim where: (1) 'the foreclosure process failed to comply with Haw. Rev. Stat. Chapter 667[;]' and (2) the foreclosing entity did not have the right to foreclose."   *Uy v. HSBC Bank USA, Nat'l Ass'n*, Civ. No. 14–00261 HG-KSC, 2015 WL 1966689, at *8 (D. Haw. Apr. 30, 2015) (alteration in *Uy*) (quoting *Lowther v. U.S. Bank N.A.*, Civ. No. 13–00235 LEK–BMK, 2013 WL 4777129, at *20, 21 (D. Haw. Sept. 4, 2013)).   Further, in *Federal Home Loan Mortgage Corp. v. Kama*, this district court noted that the Hawaiʻi Supreme Court's decision in *Kondaur Capital Corp. v. Matsuyoshi*, 136 Hawaiʻi 227, 361 P.3d 454 (2015), supported the proposition that there is a cognizable wrongful foreclosure claim under Hawaiʻi law.   *Kama*, Civ. No. 14–00137 ACK-KSC, 2016 WL 922780, at *5–6 (D. Haw. Mar. 9, 2016).

2017 WL 1240181 (D. Haw. Mar. 30, 2017) (footnote omitted).   *Galima* "conclude[d] that wrongful foreclosure is a cognizable claim under Hawaiʻi law."   *Id.* at *9.

complied with the notice requirement under HRS §§ 667-5 and 667-7 as a matter of law, and (2) HRS § 667-5(d) and the power of sale clause did not require that postponements of sale be published." *Id.* at 401, 391 P.3d at 8. The Hawaiʻi Supreme Court disagreed:

> [W]e hold the circuit court erred in dismissing the majority of Hungate's claims against Deutsche Bank regarding the alleged HRS chapter 667 Part I violations. Additionally, we conclude the mortgage's power of sale clause required [the mortgagee] to publish all postponements of the foreclosure sale. Regarding Hungate's HRS chapter 667 Part I claims against [the mortgagee's attorney], we conclude that the statute required [the attorney] (1) to give proper notice of the sale date under former HRS § 667-7 and (2) to give notice of the postponements of the sale in accordance with the mortgage's power of sale clause per former HRS § 667-5.

*Id.* at 402, 391 P.3d at 9. The court also specified that the circuit court erred in dismissing Hungate's claim that the foreclosing mortgagee "failed to publish the notices of postponements of the sale as was required by the power of sale clause[.]" *Id.* at 402, 391 P.3d at 9. In reviewing the sufficiency of the wrongful foreclosure claim, the court noted that:

> HRS § 667-5(a)(2) states that the attorney shall "[g]ive any notices and do all acts as are authorized or required by the power [of sale] contained in the mortgage." (Emphasis added). Thus, if the mortgage's power of sale clause requires more than what is required under HRS § 667 Part I, the mortgagee must follow the requirements of the power of sale clause. The relevant portion of the power of sale clause of Hungate's mortgage states: "If Lender invokes the power of sale, . . . Lender shall publish a notice of sale and shall sell the Property at the time and place and

> under the terms specified in the notice of sale." (Emphases added).

*Id.* at 404, 391 P.3d at 11. The *Hungate* court resolved any ambiguity in the power of sale clause as to whether a postponement notice must be published against the mortgagee, concluding as a matter of law that any "ambiguity in the power of sale clause should thus be resolved against [the foreclosing mortgagee], as the party who supplied the words of the contract. Thus, the more stringent interpretation, which requires postponements of the sale be published through a new notice, prevails." *Id.* at 404, 391 P.3d at 11. It held that "the circuit court should not have dismissed Hungate's complaints based on its reasoning that [the mortgagee] was not required to publish all postponements of the foreclosure sale." *Id.* at 404, 391 P.3d at 11. *See also Lima v. Deutsche Bank Nat'l Tr. Co.*, 687 F. App'x 606, 610 (9th Cir. 2017) ("The Hawaii Supreme Court recently interpreted a standard power of sale clause in a mortgage as requiring written publication of postponements, despite § 667-5's allowance of postponements by public announcement.") (citing *Hungate*, 139 Hawai'i at 400).

The *Hungate* court further elaborated on the duties of the foreclosing mortgagee[6] to strictly comply with the power of sale clause in the mortgage and

---

[6]Although *Hungate* confirmed the availability of wrongful foreclosure against mortgagees, the Supreme Court declined to recognize a cause of action under former HRS § 667-5 against the foreclosing mortgagee's attorney. The *Hungate* court explained that "creating a cause of action

with, the terms of the statute, in the context of a nonjudicial foreclosure.    According

to the court, the mortgagee's duty is substantial because—

> [t]here is no neutral party, such as a court, supervising the sale and ensuring a fair and reasonable process.    When the non-judicial foreclosure sale results in the mortgagee purchasing the property, it is therefore imperative that the mortgagee establish that this result occurred after a fairly conducted sale. [*Kondaur Capital Corp. v. Matsuyoshi*, 136 Hawaiʻi 227, 241– 43, 361 P.3d 454, 468–70 (2015)].

*Hungate*, 139 Hawaiʻi at 409, 391 P.3d at 16.[7]

With respect to an appropriate remedy, the Supreme Court explained:

> When voiding the foreclosure is not possible, the mortgagor is entitled to "restitution of their proven out-of-pocket losses" through a wrongful foreclosure claim.    [*Santiago*] at 158, 366 P.3d at 633.    Because mortgagees could be required to provide restitution to injured mortgagors under a wrongful foreclosure claim, a "sufficient incentive" exists for mortgagees to ensure that the foreclosure proceedings are correctly performed by attorneys.    *Best Place, Inc.*, 82 Hawaiʻi at 127, 920 P.2d at 341. The interests of the mortgagor are thus protected.

*Hungate*, 139 Hawaiʻi at 407, 391 P.3d at 14.

---

[against a foreclosing mortgagee's attorney] under former HRS § 667-5 is not necessary to protect the interests of the mortgagor" as "the mortgagor can protect its interest through filing a claim against the mortgagee for wrongful foreclosure."    *Hungate*, 139 Hawaiʻi at 407, 391 P.3d at 14.
[7]*Hungate*, like the present case, "concern[ed] a non-judicial foreclosure conducted pursuant to [HRS] § 667 Part I (Supp. 2008), which was repealed by the state legislature on June 28, 2012 by Act 182."    *Hungate*, 139 Hawaiʻi at 398, 391 P.3d at 5.    Prior to its repeal, HRS § 667-5 authorized the nonjudicial foreclosure of mortgaged property only "[w]hen a power of sale is contained in a mortgage."    HRS § 667-5(a).

Despite this guidance, the Hawai'i courts have yet to address the specific elements of a wrongful foreclosure claim. For that reason, Paresa relies upon Georgia law, and consistent with general tort principles, asserts that the "elements of wrongful foreclosure require a showing of duty, a breach of that duty, causation and damages." Paresa Mem. in Supp. at 9 (quoting *In re Pullen*, 451 B.R. 206, 212 (2011)).[8] At the same time, Paresa asserts that, under the Restatement (Second) of Torts and Hawai'i law, causation is *presumed* once a plaintiff establishes that the subject property was unlawfully taken or sold. *See* Paresa Reply at 11.

With this framework in mind, the Court turns to the merits of Paresa's wrongful foreclosure claim based upon HSBC's failure to publish written notice of the sale's postponement.

## B. Paresa Is Entitled to Partial Summary Judgment on the Limited Scope of Liability Raised in the Motion

Because HSBC violated the power of sale in the Mortgage and the requirements of HRS Chapter 667, it is liable for the tort of wrongful foreclosure as described by the Hawai'i Supreme Court in *Hungate*. The auction was not held on

_____

[8]Although Hawai'i courts have not adopted this formulation of the elements of wrongful foreclosure, they have adopted these elements in the context of intentional torts and negligence generally. *See, e.g.*, *Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116 Hawai'i 277, 298, 172 P.3d 1021, 1042 (2007) ("Liability for fraud, as for other torts, requires proof of duty, breach of duty, causation, and damages.") (citations omitted); *Cho v. Hawai'i*, 115 Hawai'i 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007) ("It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages.").

January 28, 2011, the date stated in the Notice of Sale published in the *Honolulu Star-Advertiser,* and was postponed by HSBC. The Mortgagee's Affidavit reflects a postponement of the original January 28, 2011 auction date, to February 11, 2011, but does not show that HSBC published a written notice of the postponed auction's rescheduled date. *See* HSBC Ex. 3 (3/10/11 Mortgagee's Aff.).

HSBC had a duty under the Mortgage's power of sale to issue and publish a new notice for the postponed and then rescheduled auction date under *Hungate*. HSBC breached this duty when it failed to strictly comply with the terms of the power of sale, and the former statute (HRS § 667-5(a)(2)), and sold the Property to itself at the postponed-auction date, without first publishing notice of the postponement.

HSBC concedes that it "publicly announced the foreclosure sale postponement instead of publishing it in a newspaper," but characterizes the failure as "a minor procedural misstep." HSBC Mem. in Opp'n at 13; Dkt. No. 31. It seeks to fend off summary judgment on several grounds, none of which the Court finds persuasive. First, HSBC argues that it "complied with the applicable notice requirements by publicly announcing the postponement of the foreclosure sale on the originally noticed date" because that is all that the Mortgage and former statute required. HSBC Mem. in Opp'n at 29–30. That argument is foreclosed by *Hungate*.

The terms of Paresa's Mortgage, like the mortgage power of sale clause in *Hungate*, "required [HSBC] to publish all postponements of the foreclosure sale." *Hungate*, 139 Hawai'i at 402, 391 P.3d at 9. Paragraph 22 of the Mortgage provides that if HSBC "invokes the power of sale, [it] shall give Borrower notice of sale in the manner provided in [Paragraph] 15. [HSBC] shall publish a notice of sale and shall sell the Property at the time and place an under the terms specified in the notice of sale." Mortgage ¶ 22. Under Paragraph 15: "All notices given by Borrower or Lender in connection with this Security instrument must be in writing." Mortgage ¶ 15. The notice provision in Paragraph 15 also states: "If any notice required by this Security Instrument is also *required under Applicable Law*, the Applicable Law Requirement will satisfy the corresponding requirement under this Security Instrument." Mortgage ¶ 15 (emphasis added). HSBC argues that the "applicable law requirement, as *Hungate* recognized, HRS § 667-5(d), 'allows for sales to be postponed 'from time to time by public announcement[,]' *id.* at 10, which is exactly what HSBC did here." HSBC Mem. in Opp'n at 30. *Hungate*, however, found otherwise.[9] This Court, guided by the Hawai'i Supreme Court's dispositive

_____

[9] *See Hungate*, 139 Hawai'i at 402–4, 391 P.3d at 9–11 (concluding, based upon identical mortgage provisions, that "the mortgage's power of sale clause required Deutsche Bank to publish all postponements of the foreclosure sale"); *Lima*, 687 F. App'x at 610 ("The Hawaii Supreme Court recently interpreted a standard power of sale clause in a mortgage as requiring written publication of postponements, despite § 667-5[(d)]'s allowance of postponements by public announcement.") (citing *Hungate*, 139 Hawai'i at 400).

holding in *Hungate*, finds that any ambiguity "as to whether a new notice must be published to postpone the foreclosure sale . . . should thus be resolved against [HSBC], as the party who supplied the words of the contract. Thus, the more stringent interpretation, which requires postponements of the sale be published through a new notice, prevails." *Hungate*, 139 Hawaiʻi at 404, 391 P.3d at 11.[10]

HSBC's failure to comply with the written notice requirement and publication terms in the Mortgage was also a violation of HRS § 667-5(a)(2), which expressly required the mortgagee to "[g]ive any notices and do all acts as are authorized or required by the power contained in the mortgage." HRS § 667-5(a)(2). *See also Decano v. Hutchinson Sugar Co.*, 45 Haw. 505, 518, 371 P.2d 217, 224 (1962) (noting that statutory provisions regarding foreclosure "became a part of the contract

---

[10]Contrary to HSBC's assertion, raised for the first time at the hearing on Paresa's Motion, the Hawaiʻi Supreme Court did not remand the matter to the circuit court to resolve any ambiguity in the interpretation of the power of sale clause or determine the intent of the parties with respect to the provision at issue. Instead, it determined, as a matter of law, that the provision should be construed against the mortgagee:

> The application of contract interpretation principles to resolve the power of sale clause's ambiguity supports the *conclusion* that Deutsche Bank was required to publish postponement notices. "[A]ny ambiguity in a mortgage instrument should be construed against the party drawing the documents," *State Sav. & Loan Ass'n v. Kauaian Dev. Co.*, 62 Haw. 188, 198, 613 P.2d 1315, 1322 (1980), or in other words, "against the party who supplies the words[.]" Restatement (Second) of Contracts § 206 (Am. Law Inst. 1981). The ambiguity in the power of sale clause *should thus be resolved against Deutsche Bank*, as the party who supplied the words of the contract. *Thus, the more stringent interpretation, which requires postponements of the sale be published through a new notice, prevails*.

*Hungate*, 139 Hawaiʻi at 404, 391 P.3d at 11 (emphasis added).

between the mortgagor and the mortgagee and any person holding under the mortgagor took it subject to those contractual limitations"). Because HSBC admittedly did not strictly comply with the power of sale, or the notice provisions, it breached its duties under the Mortgage and the former HRS Chapter 667 Part I.

Second, HSBC argues that, despite any breach on its part, Paresa should be "estopped from recovering damages based on the postponement of the foreclosure sale because it was [Paresa's] own request and conduct that *caused* the postponement." HSBC Mem. in Opp'n at 3. HSBC contends that under a theory of quasi-estoppel, which "precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by [the party]," Paresa "cannot now complain when the alleged wrongfulness occurred because HSBC willingly followed his request." HSBC Mem. in Opp'n at 3 (citing *Anderson v. Anderson*, 585 P.2d 938, 947 (Haw. 1978)).

This argument fails for at least two reasons. First, HSBC's factual support is tenuous. It is unclear from the loan servicer's records proffered by HSBC who requested the postponement. *See* HSBC Ex. M. Although it does appear that Paresa was attempting to work out a loan modification and provide reinstatement funds, nothing more definitive can be gleaned from the raw data entries provided.

In addition to this material uncertainty, it is far from clear that HSBC's

quasi-estoppel argument is even applicable under the circumstances presented.[11]

Finally, HSBC argues that Paresa has made no showing of any harm caused

by "a technical notice violation."   HSBC Mem. in Opp'n at 10; *see also id.* at 11

("To the extent there may have been minimal damages arising from the lack of

proper publication, those damages, if any, go to the price obtained at the foreclosure

sale."); *id.* at 15 ("(1) [Paresa] has made no evidentiary showing that HSBC's

alleged technical violations relating to public notice of the postponement *caused*

Plaintiff to lose ownership and use of the Rental Property for 7+ years, and

---

[11]Even assuming that quasi-estoppel applies to the tort of wrongful foreclosure, HSBC points to no conduct or position taken by Paresa that is inconsistent with his current claim that HSBC did not comply with the requirements of the Mortgage or the former statute when effecting the postponement of the sale.   *See Herrmann v. Herrmann*, 138 Hawaiʻi 144, 155 n.11, 378 P.3d 860, 871 n.11 (2016) (quoting *Maria v. Freitas,* 73 Haw. 266, 274, 832 P.2d 259, 264 (1992) ("Quasi-estoppel . . . is a species of equitable estoppel precluding one 'from asserting to another's disadvantage, a right inconsistent with a position previously taken by him' or her."); *see also Cvitanovich-Dubie v. Dubie*, 123 Hawaiʻi 266, 276, 231 P.3d 983, 993 (Ct. App. 2010), *aff'd*, 125 Hawaiʻi 128, 254 P.3d 439 (2011) ("Hawaiʻi recognizes the theory of quasi-estoppel, which is a species of equitable estoppel which has its basis in election, waiver, acquiescence, or even acceptance of benefits and which precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by [the party].") (internal quotation marks and citation omitted)).   Nor is it clear that Paresa had "full knowledge" of the relevant facts at the operative time, including HSBC's failure to publish notice, sufficient to warrant application of the quasi-estoppel principle.   *See Cvitanovich-Dubie*, 123 Hawaiʻi. at 277–78, 231 P.3d at 994–95 ("[Q]uasi-estoppel is based upon the broad equitable principle which courts recognize, that a person, with full knowledge of the facts, shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another. . . .   [B]efore one may be charged with knowledge it must appear that he possesses full knowledge of all the material particulars and circumstances and was fully apprised of the effect of the acts ratified and of his legal rights in the matter.") (internal quotation marks and citations omitted)).   Moreover, assuming further that Paresa did, in fact, request postponement of the sale, HSBC was not relieved of its duties to conduct the nonjudicial foreclosure in compliance with the provisions discussed throughout this Order, and has not established that the equities indisputably weigh in its favor.

(2) HSBC can and does establish through the factual record that Plaintiff's loss of ownership and use of the Rental Property for 7+ years *was caused by his default* and inability to cure the default or repurchase the Rental Property before it was sold."). As discussed below, portions of these arguments relate to the scope and measure of Paresa's damages, which the Court does not reach at this time. Insofar as HSBC contends that Paresa fails to establish that HSBC's conduct caused any injury for purposes of the Court's *liability* determination, the argument is rejected. Whether Paresa was in default, failed to cure, or did not repurchase the Property, is not dispositive for purposes of the Court's inquiry into whether HSBC strictly complied with the power of sale and affected a wrongful foreclosure causing harm to Paresa. Instead, Paresa's allegation is that HSBC failed to properly postpone the auction, which caused him to lose the Property at a sale that was illegal, and which occurred sooner than it should have if HSBC had lawfully complied with all applicable requirements.[12] Courts recognize this particular type of harm may be caused by the failure of a foreclosing mortgagee to give proper notice of postponement. *See Kekauoha-Alisa v. Ameriquest Mortg. Co.*, 2013 WL 773057, at *1 (Bankr. D. Haw. Feb. 27, 2013) ("The Debtor was entitled to the use of the property unless and until

---

[12]To the extent HSBC argues that Paresa fails to establish any harm to himself or his Property that was caused by its breach, in light of his own default and inability to cure, this argument misses the mark. HSBC essentially argues that its breach was not the cause of the nonjudicial foreclosure—Paresa's default was the cause. Paresa, however, does not seek to hold HSBC liable for conducting a nonjudicial foreclosure.

the Lenders conducted a valid foreclosure.   The Lenders have never done so; instead, because the Lenders failed to give proper notice of the postponement, the foreclosure sale was invalid.   The Lenders had no right to take the property from the Debtor *when they did so*.").[13]   Moreover, this injury, however it is ultimately measured in terms of damages, is "fairly traceable to the defendant's actions." *Flores v. Rawlings Co., LLC*, 117 Hawaiʻi 153, 177 P.3d 341, 355 n.23 (2008).

In sum, HSBC, as the foreclosing mortgagee, was required to strictly comply with the terms of Paresa's Mortgage, the power of sale, and the former Chapter 667, which HSBC did not do.   *Bank of Am., N.A. v. Reyes-Toledo*, 139 Hawaiʻi 361, 367, 390 P.3d 1248, 1254 (2017) ("In order to prove entitlement to foreclose, the foreclosing party must demonstrate that all conditions precedent to foreclosure under the note and mortgage are satisfied and that all steps required by statute have been strictly complied with."); *Hungate*, 139 Hawaiʻi at 404, 391 P.3d at 11 (concluding that "if the mortgage's power of sale clause requires more than what is required under HRS § 667 Part I, the mortgagee must follow the requirements of the power of sale clause"); *Kekauoha-Alisa v. Ameriquest Mortg. Co.*, 674 F.3d 1083,

---

[13]The bankruptcy court continued: "[w]hether or not the Debtor was able to make the mortgage payments, the Debtor was entitled to the use and ownership of the property until the Lenders properly foreclosed their mortgage.   The Lenders have never properly completed a foreclosure. Therefore, the Lenders unlawfully took the Debtor's property . . . before they were entitled to do so."   *Kekauoha-Alisa*, 2013 WL 773057, at *2 (awarding "Debtor the lost use value of the property from the date that she lost title by virtue of the Lenders' illegal and void foreclosure sale").

1090 (9th Cir. 2012) ("Hawaii law requires strict compliance with statutory foreclosure procedures[.]").

Because HSBC admittedly did not comply with the power of sale clause by publishing notice of the postponement, and accordingly, breached its obligations, causing an improper sale to commence on February 11, 2011, and subsequently took title in its own name,[14] Paresa is entitled to partial summary judgment with respect to liability on his Count II wrongful foreclosure claim.

## II.    The Court Does Not Reach the Issue of Damages

Although the Court has determined liability in part with respect to Count II, the Court declines, on the current record, to address the applicable measure of damages, in the absence of evidence that he suffered damages of the type that he seeks to recover.

Paresa initially sought a ruling that he is entitled to an award of the market value of the Property, plus lost use, with the actual values to be determined by a jury. *See* Paresa Mem. in Supp. at 17–19.   He appears to have changed his mind: because "this is a motion for partial summary judgment on liability[,] [t]he Court is not required to determine the precise measure of damages once a breach of duty and resulting harm is established," Paresa Reply at 3, and "whether the defendant has

---

[14]The Court confines its ruling to the tort as elaborated in *Hungate*, and notes that, whatever the defining elements of the tort may be under Hawaiʻi law, HSBC completed all of the steps necessary to affect the wrongful foreclosure.

some offset for the damages is not required to be decided by the Court on this limited motion, even though Plaintiff has urged the adoption of certain measures of damages." *Id.* at 8.[15]

The Court agrees with Paresa's second thoughts. In the absence of specific, admissible evidence that Paresa suffered injuries of the type for which he seeks compensation—*i.e.*, damages equal to the market value of the Property *and/or* the lost rental value since the date HSBC deeded the Property to itself—the Court declines to determine whether Paresa is entitled to the measure of damages corresponding to that which he seeks to recover. At present, these issues of fact are significantly intertwined with the legal issues regarding the proper measure of recoverable damages. "The proper calculation of damages and causation are questions of fact under Hawaii law." *Kekauoha-Alisa*, 674 F.3d at 1092 (citing *Kato v. Funari*, 118 Hawai'i 375, 191 P.3d 1052, 1058 (2008)); *see also Johnson v. Wayside Prop., Inc.*, 41 F. Supp. 3d 973, 982 (E.D. Cal. 2014) (where "[n]either party has submitted any evidence that speaks to whether" the threshold for statutory damages was satisfied, the court "decline[d] to assess damages; it will instead permit the trier of fact to do so after the parties have had the opportunity to present evidence

---

[15]Throughout their briefs, the parties contest the proper measure and scope of Paresa's damages, disputing (1) whether he offered sufficient evidence of his purported losses, and (2) whether the damages that he seeks were caused by or traceable to the failure to publish notice of the postponed sale date. *See* HSBC Mem. in Opp'n at 9–19, 24–25; Paresa Reply at 8–10, 14–17.

on this question"); *id*. at 982 n.2 ("even if the amount of statutory damages was generally a question for the court to determine, the question of whether plaintiff failed to mitigate his damages or whether his conduct was reasonable are quintessential jury questions") (citing *Passantino v. Johnson & Johnson Consumer Prods., Inc*., 212 F.3d 493, 508 (9th Cir. 2000)).

Based upon the totality of the record, the Court agrees that how the injury is measured, and the scope and extent of damages, is for another day and therefore denies the Motion without prejudice in these respects.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment on Count II (Dkt. No. 22) is GRANTED IN PART with respect to liability only. The Motion is DENIED to the extent it also seeks a determination that Paresa is entitled to any particular amount or measure of damages.

IT IS SO ORDERED.

DATED: May 4, 2018 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Paresa v. HSBC Bank USA, N.A.;* CV. NO. 17-00248 DKW-RLP; **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT II**