IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| HENRY VIRGIL PARESA, JR., <br><br> Plaintiff, <br><br> vs. <br><br> HSBC BANK USA, N.A., <br><br> Defendant. | CIVIL NO. 17-00248 DKW-RLP <br><br> **ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT I; AND (2) DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

HSBC seeks summary judgment on Paresa's Count I claims for quiet title and ejectment. HSBC also seeks summary judgment on the portion of Paresa's Count II wrongful foreclosure claim that is predicated on the Bank's failure to offer prospective buyers of the Property a warranty deed. Because Paresa can neither establish his superior title to the Property nor that HSBC itself claims any interest in the Property, the Court GRANTS the Motion for Summary Judgment on Count I. HSBC's Motion for Partial Summary Judgment, however, is DENIED because, based on the record before the Court, whether HSBC's offer of only a quitclaim deed was fair and reasonable under the circumstances presents questions of fact precluding summary judgment.

# BACKGROUND

## I.  Factual Background

The Court previously granted partial summary judgment to Paresa, as to liability only, on his Count II claim for wrongful foreclosure based upon HSBC's failure to publish written notice of the sale's postponement.   Dkt. No. 36 (5/4/18 Order).[1]   Because the Court and the parties are familiar with the facts, the Court recounts only those matters relevant to HSBC's present motions.

### A.  Paresa's Mortgage and Default

Paresa purchased real property located at 2888 Ala Ilima Street #2602, Honolulu, Hawaii 96813 (the "Property").[2]   To finance the purchase of the Property, Paresa obtained a loan secured by a Mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for lender New Century Mortgage Corporation, and executed an Adjustable Rate Note in the

---

[1]The 5/4/18 Order is also available at 2018 WL 2090605.

[2]The conveyance was recorded in the Office of the Assistant Registrar of the Land Court, State of Hawaii ("Land Court"), as Document No. 1539544, and noted on Certificate of Title No. 321,363, which covered the entire condominium building.   The Land Court is a court of limited jurisdiction created for the special purpose of carrying into effect the Torrens title system of land registration. *See Tilley v. Bank of New York Mellon*, 2018 WL 1415171, at *5 (D. Haw. Mar. 21, 2018) (citing *Wells Fargo Bank, N.A. v. Omiya*, 398 P.3d 838, *5 (Haw. App. July 24, 2017)).   Hawaii Revised Statutes ("HRS") Chapter 501 provides for the registration of title with the Land Court, "under which, upon the landowner's application, the court may, after appropriate proceedings, direct the issuance of a certificate of title."   *Tilley*, 2018 WL 1415171, at *5 (citing *In re Campbell*, 66 Haw. 354, 662 P.2d 206, 208–09 (Haw. 1983)).   The "purpose of the registration system is to conclusively establish title to land through the issuance of a certificate of title."   *Tilley*, 2018 WL 1415171, at *5 (citing *Bank of New York Mellon v. R. Onaga, Inc.,* 400 P.3d 559, 569 (Haw. 2017)).

amount of $90,000 ("Note"). The Mortgage was recorded in Land Court on November 29, 2006, as Document No. 3520036, and noted on Certificate of Title No. 321,363. HSBC Ex. 1 (Recorded Mortgage); Dkt. No. 42-2. In 2009, MERS assigned the Mortgage to HSBC. The Assignment was recorded in Land Court on May 5, 2009 as Document No. 3854486 and noted on Certificate of Title No. 321,363. HSBC Ex. 2 (Assignment), Dkt. No. 42-3.

When Paresa defaulted on his loan and was unable to cure the default, HSBC initiated a nonjudicial foreclosure under former HRS, Chapter 667 Part I (2008), to exercise the power of sale in the Mortgage.[3] On December 10, 2010, HSBC recorded a Notice of Mortgagee's Intention to Foreclose Under Power of Sale ("Notice") in the Hawaii Bureau of Conveyances. HSBC Ex. 3 (Ex. E to Aff. of Foreclosure), Dkt. No. 42-4. HSBC published notice of the foreclosure sale in the

---

[3]Paragraph 22 of the Mortgage contains the power of sale provision at issue, which provides in part:

> If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

> If Lender invokes the power of sale, Lender shall give Borrower notice of sale in the manner provided in Section 15. Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale. Lender or its designee may purchase the Property at any sale.

Mortgage ¶ 22.

Honolulu Star-Advertiser on December 17, 24, and 31, 2010.   HSBC Ex. 3 (Ex. G.

to Aff. of Foreclosure).   The published notice stated that the "Terms of the sale are:

… Property sold without covenant or warranty, express or implied, as to title,

possession or encumbrances … The property shall be conveyed by Mortgagee's

quitclaim conveyance[.]"   *Id.*

On January 28, 2011, at the place and time originally scheduled for the sale,

HSBC's agent publicly announced the sale would be postponed until February 11,

2011.   However, HSBC did not publish any written notice of the postponement.

HSBC Ex. 3 (Mortgagee's Aff.).   HSBC then purchased the Property with a credit

bid of $102,000 at the public auction held on February 11, 2011.   HSBC Ex. 3

(Mortgagee's Aff.).   The Property's appraised value was $120,000 as of April 22,

2011.   HSBC Reply in Supp. of MPSJ at 11 n.9, Dkt. No. 62 (citing Smith Decl.,

Ex. K (4/22/2011 Appraisal), Dkt. No. 32-23).

On November 2, 2011, HSBC conveyed the Property to itself by Mortgagee's

Quitclaim Assignment of Condominium Conveyance Document Pursuant to Power

of Sale ("Quitclaim Deed"), which was recorded in Land Court on November 23,

2011 as Document No. 4113759.   HSBC Ex. 4 (Quitclaim Deed), Dkt. No. 42-5.

On December 23, 2011, HSBC sold the Property to third-party purchasers David

Ufai Lao and Caitlyn Sokfan Lao for $118,000.   The Limited Warranty Assignment

of Condominium Conveyance Document ("Limited Warranty Deed") conveying the

Property to the Laos was recorded in Land Court on January 5, 2012 as Document

No. 8039093.   HSBC Ex. 6 (Limited Warranty Deed), Dkt. No. 40-7.

The Mortgagee's Affidavit of Foreclosure under Power of Sale ("Affidavit of

Foreclosure"), recorded in the Land Court on March 10, 2011, certified that the

foreclosure was conducted pursuant to and in compliance with HRS §§ 667-5

through 667-10 and the Mortgage.   HSBC Ex. 3, Dkt. No. 42-4.   Paresa contends

that HSBC undertook to exercise the power of sale for its own benefit, but did not

satisfy the conditions precedent to the valid exercise of the power or the statute

regulating it, former HRS § 667-5.

## II.    **Procedural Background**

On February 10, 2017, Paresa filed a two-count Complaint in state court,

which HSBC removed on May 26, 2017.   Notice of Removal, Dkt. No. 1.[4]

---

[4]The Complaint alleges that the foreclosure was wrongfully conducted in violation of Chapter 667 and the power of sale in the Mortgage, due to the following deficiencies:

a)    Plaintiff was not served with a notice of acceleration that complied with Paragraph 22 of the Mortgage;

b)    The notice of intention of foreclosure ("Notice" or "Notice of Sale") published in the newspaper by HSBC did not contain a description of the Property as required by HRS Section 667-7(a)(l) (2008), . . . ;

c)    The Notice did not offer buyers of the Property a warranty that the putative mortgagee had the right to sell or that the sale was conducted lawfully in compliance with the applicable statute and the power of sale;

Count I, entitled "Quiet Title, Ejectment & Declaratory Relief," states that

Paresa seeks to recover "return of title and possession" of the Property, Compl. ¶ 11,

and asserts that the Quitclaim Deed and Limited Warranty Deed "which proximately

caused Plaintiff to be deprived of his possession, record title, and use of the

Property, were wrongful and void or voidable[.]" Compl. ¶ 19. With respect to

the requested remedy, Paresa alternatively seeks restoration of title or equitable

damages:

> Because Plaintiff lost the Property without HSBC having the
> right to take record title to the Property or re-convey it in the
> manner and at the time and place that it did so, Plaintiff was
> unlawfully deprived of the title, possession, and use of his real
> property and is entitled to have possession and title to the
> Property restored to him. If such cannot be delivered by

---

d)      HSBC never published any date on which the Property was actually sold, in violation of Paragraph 22 of the Mortgage which stated that the mortgagee "shall sell" at the time specified in the published notice;

e)      HSBC never held an auction on a published date, in violation of Paragraph 22 of the Mortgage which stated that the mortgagee "shall sell" at the time specified in the published notice;

f)      HSBC never issued a written notice to the public of any postponed auction date, despite the requirement of Paragraph 15 of the Mortgage that "all notices" in connection with the Mortgage be "in writing" and state law requiring a "public announcement" of any postponement;

g)      The date when the Property was purportedly sold to HSBC was never published in a newspaper or otherwise in writing to the public; and

h)      The Foreclosure Affidavit fails to show that HSBC used diligent efforts to secure the best price.

Compl. ¶ 19, Dkt. No. 1-5.

Defendants, then Plaintiff is entitled to rescissory damages or other equitable damages relief to approximate the return of the Property and compensate for the loss of use.

Compl. ¶ 21; *see also* Compl. ¶ 47 ("If for any reason title and possession are not restored to Plaintiff, Plaintiff is entitled to have the Court in equity fashion a remedy in money damages against HSBC that would be equivalent to having title and possession restored.").

Paresa's wrongful foreclosure claim, Count II, alleges in relevant part:

50. The deeds from HSBC to itself and from HSBC to the Laos separately caused new damage to Plaintiff to the extent they placed the Property beyond Plaintiff's reach and ability to recover possession, which reach and ability he would have had if HSBC had not purported to convey the Property to itself and then to the Laos, in contravention of its continuing duties under the power of sale not to sell the Property except after having conducted a lawful published auction and only to the winning bidder at such a lawful published auction.

51. Had HSBC acted honestly and fairly in accordance with its duties as mortgagee, the Laos would not have purchased the Property.

52. The conveyances from HSBC to itself and from HSBC to the Laos were separate acts in violation of HSBC's continuing duties as mortgagee (or one controlling the acts of the mortgagee), which duties had not ended because no lawful published auction ever occurred.

53. As a direct and proximate result of the wrongful acts of HSBC described herein, Plaintiff lost possession of, title to, use of and occupancy of the Property. The purported transfer of title to HSBC and the subsequent purported transfer of record title and possession to the Laos

constituted a wrongful foreclosure and a conversion of the Property and deprived Plaintiff of his record title and possession of said Property.

54. As a direct and proximate result of the wrongful acts described above, Plaintiff lost the market value of his Property, and lost the use and rental value of his Property from and after the date he lost possession, all in amounts to be proved at trial.

Compl., Dkt. No. 1-5.   Paresa also alleges:

The Notice of Sale offered buyers only a quitclaim deed, without any assurance that the seller was lawfully entitled to make the sale and had complied with all requirements for a lawful and proper sale, thereby failing to do the minimum necessary to encourage buyers to attend and bid at the auction, and despite the fact that HSBC would later market the Property for its own account following the foreclosure and offer such covenant that seller had "good right to sell and assign" the Property.

Compl. ¶ 29.

HSBC first seeks summary judgment on Count I because Paresa cannot quiet title to the Property by asserting the claim solely against HSBC, which claims no interest in the Property.   Second, HSBC seeks partial summary judgment on Count II with regard to "the alleged defect that 'The Notice did not offer buyers of the Property a warranty that the putative mortgagee had the right to sell or that the sale was conducted lawfully in compliance with the applicable statute and the power of sale[.]'"   Mem. in Supp. of MPSJ at 2, Dkt. No. 41-1.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), a "party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

**DISCUSSION**

Because HSBC neither holds title to nor claims an interest in the Property and because Paresa fails to establish his own superior title to the Property, he fails to state a claim for quiet title, and HSBC's Motion for Summary Judgment is granted as to Count I. HSBC is not entitled to summary judgment, however, on Paresa's claim that it breached its common law duty to use fair and reasonable means in obtaining the best price for the Property when it failed to offer a warranty that the nonjudicial foreclosure was conducted lawfully, and instead advertised and transferred the Property via quitclaim deed. That determination presents questions of fact that preclude the entry of summary judgment.

**I.     HSBC Is Entitled to Summary Judgment on Count I**

Under HRS § 669-1(a), an "[a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or

interest in real property, for the purpose of determining the adverse claim."

Further, under Hawaii law:

> [a] quiet title action require[s] a showing that [plaintiffs] had a substantial interest in the property and that their title was superior to that of [defendant mortgagee]. *See Maui Land & Pineapple Co. v. Infiesto*, 76 Hawaiʻi 402, 408, 879 P.2d 507, 513 (1994) ("While it is not necessary for the plaintiff to have perfect title to establish a prima facie [quiet title] case, he must at least prove that he has a substantial interest in the property and that his title is superior to that of the defendants."). Therefore, "[i]n order for mortgagors to quiet title against the mortgagee, the mortgagors must establish that they are the rightful owners of the property and they have paid, or are able to pay, the amount of their indebtedness." *Caraang v. PNC Mortg.*, 795 F. Supp. 2d 1098, 1126 (D. Haw. 2011) (citing *Phillips v. Bank of America*, 2011 WL 240813, at *13 (D. Haw. Jan. 21, 2011)) (interpreting HRS § 669-1); *Ramos v. Chase Home Fin.*, 810 F. Supp. 2d 1125, 1143 (D. Haw. 2011) ("[I]n order to assert a claim for 'quiet title' against a mortgagee, a borrower must allege they have paid, or are able to tender, the amount of indebtedness.").

*Bank of New York Mellon v. Mazerik*, 139 Hawaiʻi 266, 388 P.3d 54 (App. 2016) (summary disposition order). Because Paresa fails to establish the basic elements of a quiet title claim, HSBC is entitled to summary judgment on Count I.

First, Paresa has not rebutted HSBC's showing that because it does not claim an interest in the Property adverse to Plaintiff, HSBC is not a proper quiet title defendant. *See Wegesend v. Envision Lending Grp., Inc.*, 711 F. App'x 443, 444 (9th Cir. 2018) (reasoning that no quiet title claim is asserted where "the complaint does not allege that the defendants are making competing claims to the mortgage").

HSBC sold and transferred title to the Laos pursuant to the Limited Warranty Deed in January 2012.   HSBC Ex. 6 (Limited Warranty Deed), Dkt. No. 40-7. Moreover, Paresa did not name the Laos, who are currently in possession of the Property, as defendants.   Because Paresa's quiet title claim seeks both the return of ownership of the Property to him, and the ejectment of the current owners, the Laos would be necessary and indispensable parties to the claim.   *See Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968).   In short, Paresa cannot obtain the relief sought in Count I against HSBC, which neither claims an ownership interest in nor has possession of the Property.

Second, Paresa falls short of establishing that he holds superior title to the Property.   *See Lynch v. Bank of New York Mellon*, No. CV 17-00195 LEK-RLP, 2018 WL 3624969, at *6 (D. Haw. July 30, 2018) ("While it is not necessary for the plaintiff to have perfect title to establish a prima facie case, he must at least prove that he has a substantial interest in the property and that his title is superior to that of the defendants.") (quoting *Maui Land & Pineapple Co. v. Infiesto*, 76 Hawaiʻi 402, 407–08, 879 P.2d 507, 512–13 (1994)) (some citations and quotations omitted). For example, Paresa does not contend that he paid or was ever able to tender the amount of the indebtedness, a fact necessary to establishing superior title.   *See, e.g.*, *Mazerik*, 139 Haw. 266, 388 P.3d 54 ("Appellants' counterclaim did not allege that they paid, or were able to pay, the outstanding debt on their property so as to

11

demonstrate the superiority of their claim.   Appellants' argument is, therefore,

without merit and the circuit court did not err in dismissing their quiet title

counterclaim."); *Benoist v. U.S. Bank Nat. Ass'n*, 2012 WL 3202180, *10 (D. Haw.

Aug. 3, 2012) ("[T]ender is required, regardless of whether the claim is based on

common law or statute."); *Dias v. Fed. Nat. Mortg. Ass'n*, 990 F. Supp. 2d 1042,

1059 (D. Haw. 2013) (same); *cf. Amina v. Bank of New York Mellon*, No. CV

11-00714 JMS/BMK, 2012 WL 3283513, at *4 (D. Haw. Aug. 9, 2012) (a plaintiff

does not need to tender payment in order to bring a quiet title action against a party

who, according to the complaint, "is not a mortgagee," because "[a]s between the

borrower and such third party who has nonetheless made an adverse claim, the

borrower alleges his superior title by asserting ownership of the property as

compared to a defendant with no rights in the property").

Paresa does not dispute that HSBC does not currently hold title to the

Property, but argues instead that his Count I claim for quiet title and ejectment seeks

"an *alternative* remedy from HSBC … *if* it cannot return title and possession[.]"

Mem. in Opp'n to MSJ at 3, Dkt. No. 56.   He further argues that—

> By asking HSBC to return title and possession (something that
> Plaintiff could not know with certainty was impossible when he
> filed suit as it could depend on the terms of HSBC's contract
> with the buyer), Count I in essence asks the Court to determine
> whether return of title and possession would be "impracticable"
> in this case, and if so, to grant the remedies provided for in

*Santiago* and *Silva* to the extent he cannot recover those remedies through the tort claim stated in Count II.

*Id*. at 6–7. Because Paresa fails to state a claim for quiet title against HSBC, however, he is not entitled to either alternative remedy.[5]

Accordingly, HSBC is entitled to summary judgment on the Count I quiet title claim.

## II.    HSBC'S Motion for Partial Summary Judgment Is Denied

HSBC seeks summary judgment on the portion of Paresa's wrongful foreclosure claim that is based on HSBC's failure to "offer buyers of the Property a warranty that the putative mortgagee had the right to sell or that the sale was conducted lawfully in compliance with the applicable statute and the power of sale[.]"    Compl. ¶ 19(c).    Although HSBC contends that this is not an actionable claim under Hawaii law, the Court disagrees and denies the Motion for Partial Summary Judgment.    Conceptually, HSBC's failure to offer the more desirable

---

[5]In any event, as the district court recently explained, a plaintiff such as Paresa is not entitled to possession or return of title to a defectively foreclosed property if it was subsequently sold to bona fide purchasers.    Instead, an action at law for damages is generally the appropriate remedy. *Tilley v. Bank of New York Mellon*, No. CV 17-00524 HG-RLP, 2018 WL 1415171, at *12 (D. Haw. Mar. 21, 2018) (citing *Mount v. Apao*, 139 Hawai'i 167, 180, 384 P.3d 1268, 1281 (2016); *Santiago v. Tanaka*, 137 Hawai'i 137, 158, 366 P.3d 612, 633 (2016)).    *See also Seegers v. CIT Bank N.A.*, No. CV 17-00399 LEK-KSC, 2018 WL 1558550, at *7 (D. Haw. Feb. 28, 2018) ("A quiet title action cannot be maintained unless the plaintiff plausibly alleges that the property's current owners are non-bona fide purchasers.    As Plaintiff fails to allege that the Current Owners are non-bona fide purchasers, he fails to allege a necessary element of a quiet title claim.") (citations omitted).

warranty deed could very well have prevented HSBC from carrying out its duty to achieve the best price under the circumstances. Why it chose not to do so, and whether that decision was fair and reasonable under the circumstances, are questions for the trier of fact. Specifically, the facts here demonstrate that the Property sold twice within the span of only a few months – HSBC sold the Property for $16,000 more than it paid. Whether HSBC's decision to sell the Property to the Laos with a warranty deed that it did not offer when it purchased the Property out of foreclosure played any role in HSBC's ability to obtain that $16,000 increase is likewise a question for the trier of fact.

The Hawaii Supreme Court recently affirmed that a foreclosing mortgagee has "a common law duty to use reasonable means to obtain the best price for [the] property." *Hungate v. Law Office of David B. Rosen*, 139 Hawai'i 394, 402, 391 P.3d 1, 9 (2017). The *Hungate* court "further clarif[ied] that the mortgagee's duty to seek the best price under the circumstances does not require the mortgagee to obtain the fair market value of the property." *Hungate*, 139 Hawai'i at 408, 391 P.3d at 15.

> Indeed, "[m]any commentators have observed that the foreclosure process commonly fails to produce the fair market value for foreclosed real estate." Restatement (Third) of Prop.: Mortgages § 8.3 cmt. a (Am. Law Inst. 1997). There are several reasons why foreclosure sales fail to attract fair market value bids, such as the difficulty in inspecting the subject properties, technical publication notices, marketable title concerns, and the

lack of a willing seller. *Id.*; *see also First Bank v. Fischer &
Frichtel, Inc.*, 364 S.W.3d 216, 226 (Mo. 2012) (en banc)
(Teitelman, C.J., dissenting) (stating "'it is well known that
property, when sold at a forced sale, usually does not bring its
full value' and, instead, 'has the potential of bringing only a
fraction of the fair market value'" (citations omitted)). While
final bids on foreclosed property need not equate to fair market
values, the mortgagee nonetheless has a duty to use fair and
reasonable means to conduct the foreclosure sale in a manner
that is conducive to obtaining the best price under the
circumstances.

*Hungate*, 139 Hawaiʻi at 408–09, 391 P.3d at 15–16 (2017). To be clear, in

addition to the statutory duties "required under the now-repealed HRS § 667 Part I, a

mortgagee has a duty to use 'fair and reasonable means in obtaining the best prices

for the property on sale.'" *Hungate*, 139 Hawaiʻi at 408, 391 P.3d at 15. "In

addition to the duty of a mortgagee to use fair and reasonable means to obtain the

best price for the property, a mortgagee who purchases the foreclosed property has

the burden to show that the sale was 'regularly and fairly conducted' and that 'an

adequate price' was paid under the circumstances." *Hungate*, 139 Hawaiʻi at 409,

391 P.3d at 16.

HSBC argues that its duty to obtain the best price does not, as a matter of law,

require it to offer a specific type of deed as part of a nonjudicial foreclosure sale. It

argues that it is entitled to summary judgment because Paresa states no actionable

wrongful foreclosure claim based upon HSBC's decision to offer only a quitclaim

deed. HSBC, however, identifies no Hawaii state court or federal court decision

interpreting Hawaii law that has made such a finding as a matter of law on a similar record.

For example, in *Bald v. Wells Fargo Bank*, 688 F. App'x 472 (9th Cir. 2017), the Ninth Circuit reversed the district court's dismissal of plaintiff's HRS § 480-2 unfair or deceptive acts and practices claim ("UDAP"), which alleged that the foreclosing mortgagee violated its common law duty to exercise its power of sale by "advertising in its notice of sale that only a quitclaim deed would be provided to the winning bidder, despite the fact that it sometimes provided a limited warranty deed." *Id.* at 474. The Ninth Circuit concluded that a "jury could find that Wells Fargo's practice of advertising only quitclaim deeds violated its common law duty to 'exercise reasonable diligence to secure the best possible prices,' and thus was unfair. Because the fairness of a practice is a question of fact, the district court erred by treating the question as one necessarily to be resolved as a categorical question of law." *Id.* at 475 (citation omitted). The *Bald* court acknowledged that, although the statute, "HRS § 667-5 did not specify what form of deed should be advertised," "the district court was 'particularly concerned that it could create a host of problems if it were to rule, without further detail, that a quitclaim deed or an advertisement promising only a quitclaim deed violated a court-created duty.'" *Id.* at 475. The Ninth Circuit nonetheless determined that, because a "court's ruling need not be categorical," and must "view the allegations in the light most favorable

to Plaintiffs," the relevant "facts alleged show that Wells Fargo only advertised quitclaim deeds in its foreclosure sale notices, but provided a limited warranty deed in many instances." The court found this probative in the UDAP context because "Advertising a warranty deed would enhance the value of the property being sold, and the complaint adequately alleged that Wells Fargo's failure to do so for the foreclosures at issue was an unfair practice. Whether that is so, or whether, instead, the practice was reasonable, is a question of fact to be addressed on remand." *Id*. at 475–76.

HSBC attempts to distinguish *Bald* (and similar cases)[6] by arguing that, unlike *Bald*, HSBC both advertised and then tendered a quitclaim deed during the course of the nonjudicial foreclosure. The "bait and switch" present in the other cases is absent here. Even in *Bald*, however, the touchstone was not what particular form of deed was advertised and then offered—the court's inquiry was guided by

_____

[6] *See also Lima v. Deutsche Bank Nat'l Tr. Co*., 690 F. App'x 911, 913–14 (9th Cir. 2017) (reversing district court's dismissal of UDAP claim against mortgagee, in which "Plaintiffs allege that the defendants engaged in the practice of … delivering limited warranty deeds to third-party auction purchasers, despite advertising that all auction purchasers would receive title through less valuable quitclaim deeds"); *In re Gibbs*, 522 B.R. 282, 291 (Bankr. D. Haw. 2014) ("I agree that neither the foreclosure statute nor the UDAP statute requires the lender to provide any warranties. But the argument in this case is different. The trustee alleges that BANA advertised that it would provide only a quitclaim deed, but actually issued a limited warranty deed, at least to a buyer with which BANA or its counsel had done business. Advertising to the public that only an undesirable kind of deed will be available, but then giving a better deed to a particular bidder, is a plausible allegation of an unfair or deceptive acts or practice. . . . It will be up to the finder of fact to determine whether these terms, individually or collectively, are unfair or deceptive.") (footnote omitted).

whether the foreclosing mortgagee "violated its common law duty to 'exercise reasonable diligence to secure the best possible prices.'" 688 F. App'x at 475. As was the case in *Bald*, and as is the case here, "the fairness of a practice is a question of fact." *Id.* at 475 (citation omitted).

Nor does *Sigwart v. U.S. Bank*, 713 F. App'x 535, 538 (9th Cir. 2017) counsel a different result. In *Sigwart*, the Ninth Circuit affirmed the district court's dismissal of plaintiff's UDAP claim, which alleged that the foreclosing entities advertised the sale of plaintiff's property using only a quitclaim deed when they should have offered a more attractive warranty deed (the "Quitclaim Deed Practice"). The Ninth Circuit concluded that plaintiffs' UDAP claim based upon the Quitclaim Deed Practice failed to state a claim because: "Under Hawaii law, a practice is unfair when it, among other things, 'offends public policy as it has been established by ... the common law.'" *Id.* (quoting *Hungate*, 391 P.3d 1, 18–19 (Haw. 2017)) (citation and internal quotation marks omitted). *Sigwart* recited that the common law of Hawaii requires a foreclosing mortgagee to "use fair and reasonable means to conduct ... foreclosure sale[s] in [ways] that [are] conducive to obtaining the best price[s] under the circumstances." However, the Ninth Circuit declared that "it does not necessarily follow from this duty, as Sigwart contends, that they must also as a matter of law offer a warranty deed and not a quitclaim deed to advertise the foreclosure sale." *Sigwart*, 713 F. App'x at 538 (quoting *Hungate*,

18

391 P.3d at 16). In light of *Hungate*'s pronouncement that the "duty to seek the best price ... does not require [a foreclosing mortgagee] to obtain the fair market value of the property," and "Sigwart's failure to allege any other facts demonstrating how offering only a quitclaim deed is unfair," the Ninth Circuit concluded that, without more, Sigwart's "UDAP claim based on the Quitclaim Deed Practice fails as a matter of law." *Sigwart*, 713 F. App'x at 538 (citations omitted).

*Sigwart,* in other words, turned on the fact that the record there did not "demonstrate[e] how offering only a quitclaim deed is unfair." *Sigwart*, 713 F. App'x at 538 (citations omitted). That void was absent from *Bald* and is likewise absent here. *See, e.g.*, Compl. ¶ 19.

Here, Paresa alleges that HSBC "offered buyers only a quitclaim deed, without any assurance that the seller was lawfully entitled to make the sale and had complied with all requirements for a lawful and proper sale, thereby failing to do the minimum necessary to encourage buyers to attend and bid at the auction." Compl. ¶ 29. In offering what the bankruptcy court has referred to as that type of "undesirable" deed, HSBC obtained a sale price of $102,000. Just a few months later, Paresa notes that HSBC marketed the Property on its own behalf after it acquired the Property "following the foreclosure and offer[ed] such covenant that seller had 'good right to sell and assign" the Property." *Id.* In doing so, HSBC

19

obtained a sale price of $118,000, $2,000 below the Property's then-market value, and $16,000 more than HSBC had just paid.

Upon consideration of the particular circumstances presented, which it must view in the light most favorable to Paresa, the Court cannot determine whether HSBC's conduct was reasonable as a matter of law.[7] Based on the record before this Court, a question of fact remains regarding whether HSBC complied with its duties under the power of sale and Hawaii common law when it advertised and offered the Property at nonjudicial foreclosure sale in the manner alleged.[8]

## CONCLUSION

For the foregoing reasons, the Court GRANTS HSBC's Motion for Summary Judgment as to Count I of the Complaint. Dkt. No. 39. The Court DENIES HSBC's Motion for Partial Summary Judgment, Dkt. No. 41, relating to the form of deed it offered.

---

[7]Whether defendant breached its duty under these circumstances is a question for the factfinder. When examining a tort claim, generally, "[w]hether the defendant had a duty to take reasonable action [based upon a special relationship or otherwise] is a question for the judge. But what is reasonable and unreasonable and whether the defendant's conduct was reasonable in the circumstances are for the jury to decide." *Yi v. Pleasant Travel Serv., Inc*., 911 F. Supp. 2d 907, 914 (D. Haw. 2012). "To the extent the parties argue that the Court must decide specific issues of the scope [of a party's] duty … on summary judgment, the Court again finds that whether the parties' conduct was reasonable under the circumstances is for the jury to decide." *Id*. at 915 (citation omitted).
[8]In view of this ruling, the Court denies as moot Paresa's request for a Rule 56(d) continuance. *See* Bickerton Decl., Dkt. No. 59-1.

IT IS SO ORDERED.

DATED: September 6, 2018 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Paresa v. HSBC Bank USA, N.A.;* CV. NO. 17-00248 DKW-RLP; **ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT I; AND (2) DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**